Charles Benton RUSSELL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17477.

United States Court of Appeals Ninth Circuit.

Aug. 3, 1962.

404

Marvin D. Morgenstein, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MATHEWS, HAMLEY and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

Charles Benton Russell appeals from an order denying a motion, made under 28 U.S.C. § 2255, to vacate a three-year sentence imposed by a court of the United States. The sentence in question was entered following Russell's conviction, on a plea of guilty, of possessing firearms which he had unlawfully, wilfully and knowingly failed to register with the Collector of Internal Revenue.[1] It was stated in the information charging the offense that this constituted a violation of 26 U.S.C. § 5851.

In his section 2255 motion Russell asserted that the conviction was actually obtained under 26 U.S.C. § 5841,[2] and that this statute is unconstitutional because compliance therewith compels self-incrimination in contravention of the Fifth Amendment.

The district court denied the motion on two grounds, namely: (1) the court was not shown to have jurisdiction under section 2255 because Russell did not allege that he had completed the service of two other consecutive three-year sentences imposed at the same time in other proceedings; and (2) the statute under which the challenged conviction was obtained does not unconstitutionally compel self-incrimination. On this appeal Russell questions both of these rulings.

The Government, however, asks us not to deal with these questions, but to dismiss the appeal. It asserts that this court is without jurisdiction to entertain the appeal because, in its view, Russell has already completed service of the challenged sentence. The Government points out that the questioned sentence was the first of three consecutive three-year sentences imposed on December 7, 1956. Therefore, it is argued, Russell must have commenced service of that sentence first and must have completed such service before this section 2255 proceeding was instituted on May 24, 1961.

The Government thus seeks to invoke the rule that a collateral attack upon a sentence is mooted by completion of the challenged term of imprisonment. This rule was applied in Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963, with regard to a habeas corpus application by a state prisoner. It was implied in a note on page 575, 80 S.Ct. on page 910 of that opinion that the same rule is applicable in section 2255 proceedings by a federal prisoner, notwithstanding the "unconsidered assumption" in Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393.

But while the rule has application in a section 2255 case, it is not a valid ground for dismissing an appeal from an

1. This charge was contained in count 2 of the information filed in Cause No. 11736 in the District Court of the United States for the Northern District of California, Northern Division. Count 1 of the same information charged Russell with transporting a stolen motor vehicle in violation of 18 U.S.C. § 2312. He also pleaded guilty to this charge but no sentence was imposed for this conviction and that count was subsequently dismissed.

2. Sections 5841 and 5851 are contained in the National Firearms Act (Act), as amended.

order granting or denying relief therein. The jurisdiction of this court depends only upon whether the jurisdictional requirements of statutes and rules pertaining to the taking of appeals have been met.

■ If a district court denies relief in a particular action on the ground that it lacks jurisdiction, a court of appeals has jurisdiction to entertain an appeal for the purpose of determining whether the district court correctly decided the jurisdictional question. If the holding of the district court is found to be correct, the proper appellate court action is not dismissal of the appeal, but affirmance. On the other hand, if the district court grants relief on the mistaken assumption that it has jurisdiction, an appeal may be entertained for the purpose of correcting the error, the appropriate appellate action being reversal.[3]

We therefore consider the argument advanced by the Government, not as one made in support of a motion to dismiss the appeal, but as an asserted ground for affirming the court's order denying relief.

■■ So considered, the argument is without merit. Where the first of two or more consecutive sentences imposed is asserted to be invalid, the prisoner will be deemed to have been first confined under the admittedly valid sentence or sentences. See Hoffman v. United States, 9 Cir., 244 F.2d 378, 380.[4] It follows that, if the conviction here in question is invalid, Russell will be deemed to have first begun service of the two valid sentences imposed at the same time. As it is not contended that Russell had, when this proceeding was instituted, already served all three consecutive sentences imposed upon him

on December 7, 1956, it follows that the proceeding has not been mooted by prior service of the challenged sentence.

The first ground on which the district court denied the section 2255 motion exemplifies the opposite side of the jurisdictional coin we have been discussing. Whereas the Government has argued, on its motion to dismiss the appeal, that Russell had already completed service of the questioned sentence, the district court held that the proceeding could not be entertained because Russell had not alleged that he had begun to serve that sentence. Therefore, the court reasoned, insofar as the record indicated, the section 2255 proceeding is premature.

■ Section 2255 is available only to attack a sentence under which a prisoner is in custody. Heflin v. United States, 358 U.S. 415, 418, 79 S.Ct. 451, 3 L.Ed.2d 407. Thus, in a motion filed under that section, the right to be released at that time must be claimed. Miller v. United States, 9 Cir., 256 F.2d 501. Russell did not expressly claim this right in his motion and he could not make such a claim if he were still serving either of the other two three-year sentences.

■ On this appeal, however, the parties have stipulated that Russell completed service of the two other sentences on January 5, 1961, and was on that date entitled to his release if the sentence here questioned is not valid.[5] Pursuant to 28 U.S.C. § 1653 we will therefore deem Russell's motion to be amended to add this jurisdictional allegation. In view of such amendment denial of the section 2255 motion cannot be sustained on this jurisdictional ground.[6]

---

3. See United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263; Jackson v. Kuhn, 8th Cir., 254 F.2d 555, 560.

4. The Government argues that as to this point the discussion in Hoffman is dictum. We do not agree. The Government also contends that the contrary result was reached in Lopez v. United States, 9 Cir., 186 F.2d 707. If that is true Lopez is no longer the law in this circuit in view of Hoffman.

5. In so stipulating, the parties took into account the actual allowances Russell received from prison officials for "good time" (18 U.S.C. § 4161) and earned "industrial good time." (18 U.S.C. § 4162).

6. We therefore need not decide whether, in the event Russell were still serving the valid sentences when he instituted this proceeding, he might nevertheless seek relief by regarding this as a proceeding under Rule 35, Federal Rules of

Turning to the issue of whether 26 U.S.C. § 5841 is unconstitutional, a question as to whether Russell was convicted under that section is first presented. The district court did not question Russell's assertion that he was convicted under section 5841. Nor did the United States in its initial brief in this court. In its points and authorities thereafter filed in support of its motion to dismiss, however, the United States took the position that Russell was convicted under 26 U.S.C. § 5851 rather than 26 U.S.C. § 5841. The Government there stated: "In this case the appellant has never had Section 5841 applied to him."

If it is true that Russell was convicted and sentenced under section 5851, the constitutional question referred to above might not be presented.[7] We therefore called for supplemental briefs on two questions: (1) does count 2 of the information in Cause No. 11736 charge a violation of section 5851? and (2) does that count charge a violation of section 5841?[8]

In the supplemental brief filed for Russell it is argued, consistent with his position throughout, that the count in question does not charge a violation of section 5851, but does charge a violation of section 5841. In the Government's supplemental brief it is contended that this count charges a violation under both sections 5851 and 5841. As to section 5841 this Government response thus completes a "does," "doesn't, "does" cycle as to whether the count in question charges a violation of that section.

On October 28, 1956, when Russell was alleged to have committed the act which led to the conviction here in question, section 5851 read as follows:

"It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of sections 5811, 5812(b), 5813, 5814, 5844 or 5846, or which has at any time been made in violation of section 5821. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury."

It will be seen that, as section 5851 then read, two classifications of unlawful acts are described: (1) receiving or possessing any firearm which has at any time been *transferred* in violation of sections 5811, 5812(b), 5813, 5814, 5844, or 5846; and (2) receiving or possessing any firearm which has at any time been *made* in violation of section 5821.

Had it been alleged that the firearms allegedly possessed by Russell had been *made* in violation of section 5821, this might have been a sufficient charge under section 5851, even though there are several different ways whereby section 5821

Criminal Procedure, 18 U.S.C.A., to correct an illegal sentence. See Heflin v. United States, 358 U.S. 415, 418, 422, 79 S.Ct. 451; Smith v. United States, 9 Cir., 287 F.2d 270, 273.

7. Such issue would still be presented if the allegations of the information quoted in note 8, infra, concerning Russell's failure to register were deemed essential to the charge made against him under section 5851, and therefore could not be regarded as mere surplusage.

8. This count reads:
"Information * * * 26 USCA 5851, Illegal Possession of Firearms * * *
"Count 2: That on or about the 28th day of October, 1956, at the City of Red Bluff, County of Tehama, in the Northern Division of the Northern District of California, and within the jurisdiction of this Court, * * * CHARLES BENTON RUSSELL * * *, the defendants herein, did then and there possess two firearms, to-wit: one certain 12 gauge Winchester Magnum sawed-off shotgun, Serial No. 1499643, with a barrel less than eighteen inches in length, and one certain ASTRA (Spanish) 12 gauge double barrel shotgun, Serial No. 13431, with a barrel less than eighteen inches in length, which they unlawfully, wilfully and knowingly failed to register with the Collector of Internal Revenue for the District in which the said defendants resided."

may be violated.[9] See Wright v. United States, 6 Cir., 243 F.2d 546. The result would possibly be the same if it had been charged that the firearms allegedly possessed by Russell had been *transferred* in violation of one of the six statutes referred to in the part of section 5851 relating to transferred firearms.[10]

But here ·it was not charged that the firearms allegedly possessed by Russell had been either *made* or *transferred* nor, assuming they had been either made or transferred, which if any of the statutes relating to the making and transfer of firearms, referred to in section 5851, had been violated.

This deficiency is not cured by inclusion in the count of the wholly irrelevant allegation (insofar as section 5851, as it then read, is concerned) that Russell and other defendants unlawfully, wilfully and knowingly failed to register their firearms with the Collector of Internal Revenue. Failure to register was not made unlawful by section 5851 as it read in 1956, or by any of the other sections referred to in section 5851.

■ Nor is the indicated deficiency in the allegations of count 2 cured by giving application to the last sentence of section 5851, wherein a rebuttable presumption of guilt under that section arises from proof of possession of such a firearm.

This is but a rule of evidence relieving the Government of the burden of going forward with the evidence to establish the other elements of the crime, once possession has been shown. It does not define the offense and unless the offense is charged in the indictment or information there is nothing upon which the presumption can operate. See McDade v. United States, 6 Cir., 206 F.2d 494, dealing with the similar statutory presumption set out in 21 U.S.C.A. § 174, relating to the importation of narcotic drugs.

■ We are not here dealing with a minor or technical deficiency which did not prejudice the accused. As the questioned count reads, Russell was not sufficiently apprised of what he must prepare to meet. Nor, in the event other proceedings had been taken against him for essentially the same criminal conduct, could he have, with assurance, pleaded a former conviction by reason of his plea of guilty on this count. These are two of the *criteria by which the sufficiency* of an indictment or information is to be measured, and this count fails to meet either of them. See Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240.

■ We therefore hold that the challenged count fails to charge a crime under section 5851.[11] If the conviction and

9. Under section 5821, the person subject to the tax imposed by section 5821(a) must: (1) declare in writing prior to making such firearm his intention to make a firearm; (2) affix to the original of such declaration the stamp described in section 5821(d); (3) file the original declaration and a copy thereof; (4) pay, in advance of the making of the firearm, the tax provided for in section 5821(a); and (5) if the maker of the firearm is exempt from the tax, make the report required by section 5821(b).

10. Under these statutes, the person transferring a firearm must: (1) pay the tax provided for in section 5811 unless the transfer is exempt under section 5812 (a); (2) give the notice of exemption provided for in section 5812(b), if the transfer is exempt from tax; (3) execute a written order on an application form issued by the Secretary or his dele-

gate, as provided in section 5814; affix to such order a stamp as provided in section 5813; (4) in case of exportation of the firearm, follow the procedure prescribed in section 5844; and (5) comply with the laws, pertaining to the assessment, collection, remission and refund of taxes, the engraving, issuance, sale, accountability, cancellation and distribution of tax-paid stamps, and "all other provisions of the internal revenue laws" not inconsistent with the provisions of Chapter 53, as referred to in section 5846.

11. The questioned count would charge a crime under section 5851, as that statute reads today. On September 2, 1958, the first sentence of section 5851 was amended to add the indicated italicized words:

"It shall be unlawful for any person to receive or possess any firearm which has

sentence are to stand it must therefore be on the ground that the conviction was obtained under section 5841, quoted in the margin.[12]

■■■ Both parties agree that the count under which the conviction was obtained charges a crime under section 5841. We also agree. As before indicated, however, Russell argues that his conviction under that statute must be set aside because section 5841 unconstitutionally compels self-incrimination in contravention of the Fifth Amendment.[13] The Government joins issue on this question.

Under the first sentence of section 5841, every person possessing a firearm, as defined in the Act, is required to register with the Secretary or his delegate certain information concerning such weapon. Under the second sentence of that section, however, a person possessing a firearm is excused from registering such information if: (1) he acquired the firearm by transfer or importation, or if he made such a firearm, and, (2) if there was compliance with the provisions of Chapter 53 relating to the transfer, importation, or making of firearms, as the case may be.

It follows that any person who, in conformity with section 5841, registers information concerning a firearm, thereby admits that he is in possession of such firearm, and that he did not acquire or make it in compliance with section 5851.

at any time been transferred in violation of sections 5811, 5812(b), 5813, 5814, 5844, or 5846, or which has at any time been made in violation of section 5821, *or to possess any firearm which has not been registered as required by section 5841.* Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains such possession to the satisfaction of the jury. As amended Sept. 2, 1958, Pub.L. 85–859, Title II, § 203(h) (1), (2), 72 Stat. 1428." (Emphasis supplied.)

In Senate Report 2090, July 31, 1958, 3 U.S.Code Cong. and Admin. News, 1958, p. 4604, this explanation for the 1958 amendment was given:

"Existing law (sec. 5851) specifically defines as an unlawful act the receipt or possession of any firearm which has been transferred or made in violation of law, but fails to so define the possession of an unregistered firearm. The amendment of this section specifically defines such possession of an unregistered firearm as an unlawful act and makes applicable to such possession the presumption contained in the section. The primary purpose of this change is to simplify and clarify the law and to aid in prosecution."

12. Section 5841 reads:

"Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, and, if such person is other than a natural person, the name and home address of an executive officer thereof. No person shall be required to register under this section with respect to a firearm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the provision which applied thereto were complied with. Aug. 16, 1954, 9:45 a. m. E.D.T. c. 736, 68A Stat. 725."

The term "firearm," as used in section 5841 and elsewhere in the Act, is defined as follows in 26 U.S.C. § 5848(1):

"(1) Firearm.—The term 'firearm' means a shotgun or rifle having a barrel of less than 18 inches in length, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition, but does not include any rifle which is within the foregoing provisions solely by reason of the length of its barrel if the caliber of such rifle is .22 or smaller and if its barrel is 16 inches or more in length."

13. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." This clause has been broadly construed to forbid compulsory self-incrimination not only in any criminal case, but also in any federal inquiry where the information might be useful later to convict of a federal crime. United States v. Kahriger, 345 U.S. 22, 34, 73 S.Ct. 510, 97 L.Ed. 754, concurring opinion of Justice Jackson.

By reason of the rebuttable presumption provided for in the last sentence of section 5851, quoted above, such act of registration also establishes prima facie, that the registrant's possession of the firearm is unlawful under section 5851, either because the weapon was at some time transferred by someone in violation of sections 5811, 5812(b), 5813, 5814, 5844, or 5846, or because the weapon was at some time made by someone in violation of section 5821.

Section 5841 therefore compels every person in possession of a firearm, as defined in the Act, to be a witness against himself concerning compliance with statutes for violation of which there is a heavy penalty.[14]

But the Government argues, on the authority of United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, and Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, that because of the particular purpose sought to be served by this compulsory registration provision, the fact that it compels the registrant to be a witness against himself does not establish that section 5841 contravenes the Fifth Amendment.

In Sullivan, the Supreme Court held that the Fifth Amendment does not excuse one from making a return of his net income, as required by the Revenue Act of 1921, although the whole or a large part of the gross income was derived from business in violation of the National Prohibition Act. Justice Holmes, speaking for the Court, said (page 263, 47 S.Ct. page 607):

"* * * If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all. * * *"

The Act of which section 5841 is a part levies certain licenses and excise taxes.[15] We assume, without deciding, that the taxes thereby imposed upon the transfer or making of firearms represents an exercise of the constitutional power of Congress to lay taxes.

Unlike the defendant in Sullivan, however, Russell was not accused of failing to report taxable income. In effect, he was charged with failing to inform the Secretary or his delegate that he was actually or presumably in unlawful possession of a firearm because he or someone else had failed to comply with various provisions of Chapter 53, as specified in section 5851, some of which provisions imposed taxes. Sullivan could report income but, in the exercise of his Fifth Amendment privilege, decline to reveal its source. Hence compliance with the statute involved in Sullivan did not require self-incrimination. Russell could make no report under section 5841 without admitting an actual or presumptive violation of law.

We conclude that United States v. Sullivan is not dispositive of the question before us.

Somewhat more analogous to the instant case are United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415,

---

14. The penalty provision of the National Firearms Act, 26 U.S.C. § 5861, reads as follows:

"Any person who violates or fails to comply with any of the requirements of this chapter shall, upon conviction, be fined not more than $2,000, or be imprisoned for not more than 5 years, or both, in the discretion of the court. Aug. 16, 1954, 9:45 a. m. E.D.T., c. 736, 68A Stat. 729."

15. Section 5841 is derived from section 5(a) of the National Firearms Act (Act), 48 Stat. 1236, 1238. It was codified as section 3261(b) in the Revenue Act of 1939, 53 Stat. 393. The section took its final form as section 5841, being enacted as a part of subchapter B of Chapter 53 of the Internal Revenue Code of 1954, 68A Stat. 725. In this chapter Congress levied a license tax upon the business of importing, manufacturing or dealing in firearms (26 U.S.C. § 5801), and an excise tax upon the transfer (26 U.S.C. § 5811) or making (26 U.S.C. § 5821) of firearms.

99 L.Ed. 475. Kahriger was a prosecution for wilfully failing to register and pay the occupational tax on the business of accepting wagers in Pennsylvania where gambling is illegal. The registration provision of that statute required persons who intended to engage in the business of accepting wagers to file names, addresses, and places of business. The Supreme Court held that this provision was not violative of the Fifth Amendment because the privilege against self-incrimination " * * * has relation only to past acts, not to future acts that may or may not be committed * * * " (page 32 of opinion 73 S.Ct. page 515). The same view was expressed and the same result was reached in Lewis, involving the District of Columbia, where wagering is a federal offense.

The distinction between these cases and the one now before us is readily apparent. Unlike Kahriger and Lewis, Russell was required, under section 5841, to provide information as to past conduct (or present status) which was actually or presumptively unlawful. There was thus present the very circumstance which the Supreme Court, in Kahriger and Lewis found it necessary to negate in order to sustain the registration provisions of the wagering tax statutes there in question.[16]

Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, also relied upon by the Government, involved neither a taxing statute nor a registration provision. That case was a prosecution on charges of having made tie-in sales in violation of regulations under the Emergency Price Control Act, 56 Stat. 23, as amended, 50 U.S.C.App. 901. The defendant had been previously served with subpoenas directing him to produce sales invoices, sales books, ledgers, inventory records, contracts and other records covering a specified period. At the administrative hearing where these records were to be submitted the presiding official, in response to a question by defendant's counsel, stated that defendant was entitled to whatever immunity flows as a matter of law from the production of such records. The defendant thereupon produced the records but claimed constitutional privilege.

In the criminal prosecution based in part on information thus obtained, the defendant entered a plea in bar, claiming immunity from prosecution based on section 202(g) of that Act. The Supreme Court held that Congress did not intend the immunity provision to apply with regard to the furnishing of such records. That Court also held that in compelling the defendant to produce such records free of immunity, the Fifth Amendment was not contravened. In doing so the Court said (at page 33, 68 S.Ct. at page 1392):

" * * * the privilege which exists as to private papers cannot be maintained in relation to 'records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established.' "

There is little if any similarity between the provisions of the Emergency Price Control Act, and regulations thereunder,

16. The circumstance just stated indicates why the observation in United States v. Kahriger, 345 U.S. 22, 32, 73 S.Ct. 510, 515, as to when the privilege against self-incrimination must be claimed is not here applicable. The Supreme Court there said: "Since appellee failed to register for the wagering tax, it is difficult to see how he can now claim the privilege even assuming that the disclosure of violations of law is called for."

In Kahriger, the Supreme Court considered that the act of registering under the wagering tax statute there involved was not itself incriminating because it gave notice only of proposed future conduct and that the registrant should therefore have registered, claiming the privilege as to any incriminating information which he was called upon to divulge.

In our case, however, the act of registering is necessarily incriminating whether or not any information other than the registrant's name is supplied, for it admits possession of a firearm, this being presumptively unlawful under section 5851.

requiring the maintenance and production of certain records, and the section 5841 registration provision. Section 5841 does not pertain to the regular maintenance of records. Rather it requires the furnishing of information concerning past conduct when, and only when, such past conduct is actually or presumptively unlawful. In the light of subsequent pronouncements by the Supreme Court,[17] we are not disposed to read the opinion in Shapiro any broader than its actual holding, namely that one may be compelled to produce for examination business records required to be kept in due course.

The Government advances the argument that there are ways of possessing a firearm which would require registration in situations where the registrant had committed no crime under section 5851. Thus, it is argued, registration need not be self-incrimination and so section 5841 is not unconstitutional on its face. As an instance in which such circumstances could exist, the Government hypothesizes the finding of a firearm which the finder has neither made nor accepted the transfer thereof.[18]

 Section 5851 is violated by possession of a firearm which was at *any* time transferred by anyone without complying with certain statutes referred to in that section, or which was at *any* time made by anyone without complying with section 5821. Hence a possessor does not exculpate himself merely by showing that he personally neither made nor accepted the transfer of the firearm which is in his possession.

Even if it be assumed that one may, under section 5841, be required to register information concerning a firearm in his possession, although he is not, under the circumstances, criminally liable, the act of registration is nevertheless self-incriminating. As previously noted, under the second sentence of section 5851, proof of possession establishes prima facie, a violation of that section. The defendant then has the burden of explaining such possession "to the satisfaction of the jury."

 It has been held that the privilege against self-incrimination extends to information which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118. This being so, it cannot be doubted that the privilege extends to information which, by operation of statute, prima facie establishes guilt. The fact that, under stated circumstances, the registrant may be able to convince the jury that his possession was not in violation of the Act, is immaterial. The privilege may be claimed by one who is innocent but who reasonably could fear that disclosure of the information would result in crim-

---

17. In Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511, which concerned an immunity statute, the Court stated that it left Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 unqualified. In the Boyd case it was held that production of documents in a non-criminal proceeding arising under the revenue laws was, under the facts of that case, unconstitutionally compelled.

In Communist Party v. Control Board, 367 U.S. 1, at 108–109, 81 S.Ct. 1357, 6 L.Ed.2d 625, the majority declined to deal with the constitutionality under the Fifth Amendment of the registration provision of section 7 of the Subversive Activities Control Act of 1950, 64 Stat. 987, 50 U.S.C. 781 et seq., holding that this question was premature. But the majority acknowledged that novel and difficult questions as to the reach of the Fifth Amendment would be involved if and when that question is presented. Four dissenting justices, feeling that this question was not premature, expressed the view that the registration provision violated the constitutional privilege against self-incrimination.

18. The Government also refers to our recent unreported one-sentence per curiam reversal in Paredes v. United States, No. 17399, decided on October 2, 1961.

It is not our usual practice to refer in our opinions to unreported per curiam decisions of this court. However, since the Government has cited that case in support of its position we believe it proper to note that, in Paredes, the defendant did not have possession of a firearm within the meaning of the Act.

**412**

inal charges against which he would have to defend himself. See Blau v. United States, 340 U.S. 159, 161, 71 S.Ct. 223, 95 L.Ed. 170.

█ We conclude that 26 U.S.C. section 5841 abridged Russell's Fifth Amendment privilege against self-incrimination. The order denying the motion made under 28 U.S.C. section 2255 is therefore reversed and the cause is remanded to the district court for entry of a judgment vacating the judgment and sentence in question and discharging appellant forthwith.

As Russell has been serving this invalid sentence since January 5, 1961, the certified copy of the judgment of this court will issue on the fifth day after the filing of this opinion unless a petition for rehearing is filed on or before the fourth day.