**UNITED STATES of America, Plaintiff,**

v.

**Louis FLEISH, Defendant.**

**Crim. A. No. 24766.**

United States District Court
E. D. Michigan, S. D.
March 13, 1964.

---

Lawrence Gubow, U. S. Atty., Paul J. Komives, Asst. U. S. Atty., Detroit, Mich. (Robert H. Pytell, Asst. U. S. Atty., Detroit, Mich., on the brief), for plaintiff.

William G. Comb, Detroit, Mich., for defendant.

LEVIN, Chief Judge.

Defendant, Louis Fleish, brings this motion under Section 2255 of Title 28 United States Code for vacation of a sentence imposed upon him on April 7, 1939, by the Honorable Edward J. Moinet, then a judge of this Court.

The fundamental question raised by this motion is whether a provision of the National Firearms Act, 26 U.S.C. § 5841,* requiring registration by persons possessing certain weapons, contravenes the self-incrimination clause of the Fifth Amendment to the United States Constitution.

A 27-count indictment was returned on June 2, 1938, charging Defendant with three violations of the National Firearms Act with respect to each of nine different weapons. Count I charged that Defendant had received and pos-

sessed a certain firearm transferred in the United States "upon which firearm the tax required by law had not been paid." (26 U.S.C. § 5854(b)).** Count II charged that Defendant had received and had been in possession of that firearm and that that firearm " * * * had been transferred without a written order from the person seeking to obtain such article on an application form issued * * * by the Commissioner of Internal Revenue. * * * " (26 U.S.C. § 5851)***. Count III charged Defendant with possessing that firearm "without registering with the Collector [of Internal Revenue] * * * the number or other mark identifying such firearm together with the name, address, and place where such firearm was usually kept, and place of business or employment of such persons * * * " (26 U.S.C. § 5841). Those three counts are substantially similar to each of eight succeeding sets of counts charging three violations with respect to eight other weapons.

During the trial, thirteen counts were dismissed, and the remaining fourteen counts were submitted to the jury, which returned, on April 7, 1939, a verdict of guilty as to each of them.

On that same day, Judge Moinet sentenced Defendant to five years, the maximum sentence permitted by the statute, on Count I, which charged failure to pay the tax, and on Counts III, XII, XV, XVIII, and XXI, which charged failure to register as required by Section 5841, these six sentences to run consecutively. The Court also imposed a fine of two thousand dollars. No sentence was imposed on the other eight counts, six of which did not relate to the registration provision.

The United States Court of Appeals for the Sixth Circuit affirmed the judgment. Fleish, et al., v. United States, 6 Cir., 123 F.2d 1015 (1941). The ques-

---

* § 3261(b), 1939 Code, under which Fleish was convicted.

** § 3263(b), 1939 Code, under which Fleish was convicted.

*** § 2726(a), 1939 Code, under which Fleish was convicted, lacks the presumption of guilt, arising out of possession of a firearm, created by the second sentence of § 5851 set out in footnote 4, infra.

tion presented by this motion was not presented or ruled upon.

Defendant began serving his thirty-year sentence on May 5, 1939. He was paroled on November 4, 1957, but, having allegedly violated the terms of his parole, he is now serving the remainder of his original sentence. Defendant may become eligible for release on or about October 12, 1967. See 18 U.S.C. § 4161.

Defendant has made numerous collateral attacks on his conviction and consequent imprisonment.[1] However, he has never previously attacked the constitutionality of Section 5841.

The precise question presented here has been ruled upon by the United States Court of Appeals for the Ninth Circuit in a well-considered decision, Russell v. United States, 306 F.2d 402 (1962). The Court there held that Section 5841 contravenes the Fifth Amendment privilege against self-incrimination. This Court agrees.

However, the Government attacks the decision in Russell, raising arguments perhaps not presented to the Ninth Circuit. Therefore, although following the decision in Russell, this Court believes that it ought to make some additional observations.

Section 5841[2] requires every person possessing a firearm, as that term is defined in Section 5848(1),[3] to register with the Secretary or his delegate certain information concerning himself and the firearm. However, the Act provides that one need not register if (1) he acquired the firearm by transfer or importation or if he made it himself, and (2) he fully complied with the provisions of Chapter 53 of Title 26 U.S.C. in so making, transferring, or importing the firearm.

The Court in Russell, supra, stated:

" * * * any person who, in conformity with section 5841, registers information concerning a firearm, thereby admits that he is in possession of such firearm, and that he did not acquire or make it in compliance with section 5851.[4] * * *

1. Fleish v. Johnston, 145 F.2d 16 (9th Cir. 1945), cert. denied, 324 U.S. 840, 65 S.Ct. 587, 89 L.Ed. 1402; United States v. Fleish, 90 F.Supp. 273 (D.C. E.D.Mich.1949), aff'd, 181 F.2d 1009 (6th Cir. 1950); Fleish v. Swope, 226 F.2d 310 (9th Cir. 1955), affirming trial court's dismissal of Petition for Habeas Corpus; Fleish v. Chappell, No. 17333 (pending), United States Court of Appeals for the District of Columbia, contesting the revocation of his parole.

2. "§ 5841. *Registration of persons in general*
"Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, and, if such person is other than a natural person, the name and home address of an executive officer thereof. No person shall be required to register under this section with respect to a firearm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the pro-

visions which applied thereto were complied with."

3. "§ 5848. *Definitions*
"(1) Firearm.—The term 'firearm' means a shotgun or rifle having a barrel of less than 18 inches in length, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition, but does not include any rifle which is within the foregoing provisions solely by reason of the length of its barrel if the caliber of such rifle is .22 or smaller and if its barrel is 16 inches or more in length."
This was § 2733(a) 1939 Code.

4. "§ 5851. *Possessing firearms unlawfully transferred or made.* It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of sections 5811, 5812(b), 5813, 5814, 5844, or 5846, or which has at any time been made in violation of section 5821. Whenever on trial for a violation of this section the defendant is shown to have or to have

"Section 5841 therefore compels every person in possession of a firearm, as defined in the Act, to be a witness against himself concerning compliance with statutes for violation of which there is a heavy penalty." [5] 306 F.2d 408, 409.

The Government disputes this analysis on the ground that situations could arise where one might be guilty of failing to register in compliance with Section 5841 and yet not be guilty of violating any other laws. Cited as an example is the situation of a person who may have possessed the weapon prior to the effective date of the statute. This argument assumes a narrower definition of self-incrimination than that made by the Supreme Court in Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118;

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."

The Supreme Court has yet to declare a registration statute null and void on the ground that it violated the self-incrimination clause of the Fifth Amendment, but language in several decisions of that Court lends support to the decision in Russell, supra.

In United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), the defendant was convicted for refusing to file an income tax return. The defendant argued that since his income was derived from a business, the operation of which violated the National Prohibition Act, the filing of a return would necessarily incriminate him, and therefore, under the Fifth Amendment, he was excused from filing. Writing for the Court, Justice Holmes stated 274 U. S. at pages 263, 264, 47 S.Ct. at pages 607, 71 L.Ed. 1037:

"* * * If the form of the return provided called for answers that the defendant was privileged from making *he could have raised the objection in the return*, but could not on that account refuse to make any return at all. * * * [I]f the defendant desired to test that or any other point he should have tested it in the return so that it could be passed upon. He could not draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law." (Emphasis added.)

Section 5841 differs from the provisions requiring the filing of income tax returns in that the only major effect of Section 5841 is to produce incriminating information.

In Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed. 2d 625 (1961), the Court divided 5 to 4 on a wide range of constitutional issues.[6] The majority opinion, written by Mr. Justice Frankfurter, did not reach the question of whether the registration provision in the Subversive Activities Control Act, 50 U.S.C. § 781 et seq., was unconstitutional as a violation of the self-

---

had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury."
 The last sentence of § 5851 was not contained in § 2726(a), 1939 Code, under which Fleish was convicted.

5. "§ 5861. *Penalties*
 "Any person who violates or fails to comply with any of the requirements of this chapter shall, upon conviction, be fined not more than $2,000, or be imprisoned for not more than 5 years, or both, in the discretion of the court."
 This was § 2729, 1939 Code.

6. The four dissenting Justices, Warren, Ch.J.; Black, J.; Douglas, J.; Brennan, J.; each filed a separate opinion and each reached the conclusion, *inter alia*, that the registration provision of the statute there involved violated the self-incrimination clause of the Fifth Amendment.

incrimination clause. However, dictum on this point, distinguishing the case before the Court from Sullivan, supra, supports the decision in Russell:

> "Perhaps Sullivan is distinguishable, however, from the situation of registration under the Subversive Activities Control Act. Tax returns must be filed generally, and answers to tax return questions may involve any of a wide variety of activities, whereas the obligation to file a registration statement compels a few particular individuals to come forward, to identify themselves, and to suggest, at least, their connection with a relatively limited potential sphere of criminal conduct. Then, too, in Sullivan, Mr. Justice Holmes assumed that some, at least, of the answers to the questions on the tax return would not have been incriminating, whereas in the case of the registration statement, any claim of the privilege would involve the withholding of all information * * *." 367 U.S. 108, 109, 81 S.Ct. 1417, 6 L. Ed.2d 625.

It should be noted that this dictum is wholly consistent with the following position taken in the dissent written by Mr. Justice Brennan, in which the Chief Justice concurred, except that this dissent takes the view that the self-incrimination question should have been reached:

> "A claim of privilege on the registration form which names the official would be self-defeating. For if the admission of officership in the Communist Party is incriminating, then a claim of privilege by name would amount to the very same admission —the claimant would be asserting that he could not complete, sign or file a form because the admission of his officership would incriminate him. * * * Claiming the privilege here does more than attract suspicion to the claimant; it admits an element of his possible criminality. Moreover, registration is unique because of the initial burden it puts on the potential defendant to come forward and claim the privilege. He may thereby arouse suspicions that previously had not even existed and, indeed, virtually establish a prima facie case against himself. The usual situation in which the privilege is invoked is a judicial, legislative, or administrative proceeding in which the person claiming it appears because there is already some reason to think that he has information on the subject matter of the inquiry. His invocation of the privilege in such circumstances may confirm the suspicions of his interrogators, but is less likely to arouse them initially than in the case of a registration regulation which calls on all persons everywhere, known or unknown, who fall within a prescribed category, to come forward and identify themselves.
>
> " * * * Mr. Justice Holmes wrote in Sullivan that the taxpayer 'could not draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law.' 274 U. S. at page 264, 47 S.Ct. at page [607] 608 [71 L.Ed. 1037]. Petitioner seeks to draw no such 'conjurer's circle' for its officials in an essentially noncriminal area of inquiry, but to assert their privilege against replying to an inquiry in a regulatory area permeated with criminal statutes in circumstances where any word upon the paper responsive to the inquiry would involve them in the admission of one of the major elements of a crime, and where the effect of even claiming the privilege is not merely to arouse suspicions of illegality but to admit the same element of the crime." 367 U.S. 195, 196, 199, 81 S.Ct. 1462, 1464, 6 L.Ed. 2d 625.

The United States Court of Appeals for the District of Columbia recently dealt with the very question which the

972

Supreme Court failed to reach in Communist Party, supra, i. e., the self-incrimination ramifications of the registration provisions of the Subversive Activities Control Act. Communist Party of United States of America v. United States, 331 F.2d 807 (D.C.Cir., 1963). Chief Judge Bazelon, writing for the Court, relied on the decision in Russell:

" * * * [A] statute requiring registration of firearms whose possession violated certain other criminal provisions compelled incriminating admissions and was thus an unconstitutional infringement of the Fifth Amendment privilege. Here, just as in Russell, 'the act of registering is necessarily incriminating whether or not any information other than the registrant's name is supplied * * *.' 306 F.2d at 410 n. 16. * * * We hold that the privilege against self-incrimination was available to the officers as legal justification for refusing to sign [the required] form * * *."

Although the Court did not hold the subversive activities registration provision unconstitutional, one may infer from the reliance by the Court upon the decision in Russell that the Court would have adopted the approach of Russell had the facts [7] before it so required.

The Supreme Court of the United States has considered in two different cases the constitutionality of gambling registration provisions: United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and Lewis v. United

States, 348 U.S. 419, 75 S.Ct. 415, 99 L. Ed. 475 (1955). In Kahriger, the defendant argued that since accepting wagers violates the criminal laws of Pennsylvania, a federal statute requiring all persons accepting wagers to register and pay a federal occupational tax violates the self-incrimination clause of the Fifth Amendment. The Court, in the course of holding that that statute did not violate the self-incrimination clause, said:

"Assuming that respondent can raise the self-incrimination issue, that privilege has relation only to past acts, not to future acts that may or may not be committed. * * Under the registration provisions of the wagering tax, appellee is not compelled to confess to acts already committed, he is merely informed by the statute that in order to engage in the business of wagering *in the future* he must fulfill certain conditions." 345 U.S. at 32, 33, 73 S.Ct. 515, 97 L.Ed. 754 (Emphasis added.)

In Lewis, the defendant violated federal anti-gambling laws in that the offenses occurred in the District of Columbia. The opinion of the Court stressed that payment of the occupational tax or registration fee must be made *before* engaging in the business of wagering.[8]

Every registration in compliance with Section 5841 inevitably incriminates the registrant. Each registration inevitably declares, not an intention to act, but current criminal activity.

7. The Party was indicted for failing to register pursuant to an order of the Subversive Activities Control Board. The only action taken by the Party was sending a letter to the Attorney General containing the Party seal but no signatures, stating that the officers, because of fear of self-incrimination, refused to file any forms or authorize their filing by anyone else. The Court concluded: "We hold only that the availability of someone to sign the forms was an element of the offense; that the officers, who should otherwise have signed, were unavailable by reason of their valid claim of the privilege against self-incrimination; that the

government had the burden of showing that a volunteer was available; and that its failure to discharge this burden requires reversal of the conviction." 331 F. 2d 807.

8. "The condition here important was that petitioner must *first* pay the $50 tax, but that did not give him any license to engage in an unlawful business. License Tax Cases, 5 Wall. 462, 471, 18 L.Ed. 497. It only warned that if he *proposed* to carry on this particular business he must pay the tax." 348 U.S. at 422, 75 S.Ct. at 417, 99 L.Ed. 475. (Emphasis added.)

Therefore, of the six counts upon which Fleish was sentenced, five were invalid. Defendant has already served more than twenty years, only five of which were supported by a valid conviction.

However, the Government argues that a holding that conviction under Section 5841 contravenes the Constitution does not necessitate the immediate release of Defendant, since the Court failed to sentence him with respect to six valid counts of conviction.

The Government relies on the decision of the United States Court of Appeals for the Ninth Circuit in Nemec v. United States, 191 F.2d 810, 811 (1951). The Court in Nemec stated: "[I]t is of no consequence what counts the judgment specified, so long as there was conviction on a valid count capable of bearing the sentence imposed." The defendant there had been convicted on four counts and was *sentenced* on all four, three sentences to run consecutively and one to run concurrently. Some of the counts were attacked jurisdictionally, but the Court found that at least one count not under attack could have sustained the four-year total sentence.

The rule stated in Nemec apparently follows a decision of the Supreme Court wherein, as to a general sentence, the following was held:

"* * * a judgment upon an indictment containing several counts, with a verdict of guilty upon each, will be sustained if any count is good, and sufficient in itself to support the judgment." Whitfield v. Ohio, 297 U.S. 431 at 438, 56 S.Ct. 532 at 534, 80 L.Ed. 778 (1936).

 Although Counts X, XIII, XVI, XIX, XXII, and XXV could have supported the thirty-year sentence, no such sentence was in fact imposed. See Armstrong v. United States, 8 Cir., 228 F.2d 764, 765, 766 (1956).

It is too late now to impose sentence on those counts on which Defendant was convicted but not sentenced. Federal Rule of Criminal Procedure 32(a)

states: "Sentence shall be imposed without unreasonable delay." For a discussion of this rule, see Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L. Ed.2d 393 (1957). A lapse of almost twenty-five years between conviction and sentence would be an "unreasonable delay" prohibited by the Rule.

An order vacating the sentence and releasing Defendant is being entered.