**James Willard LOVELACE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 22628.**

United States Court of Appeals
Fifth Circuit.

March 3, 1966.

Robert M. Brinson, Rome, Ga., for appellant.

F. D. Hand, Jr., Asst. U. S. Atty., Atlanta, Ga., Charles L. Goodson, U. S. Atty., for appellee.

Before GEWIN and BELL, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge.

In this case, appellant, hereinafter called defendant, was arrested by police officers in Rome, Georgia, about midnight, Friday, November 29, 1963. He was held in the city jail until Monday, December 2, 1963, when he was taken into custody by federal officers and taken before a U. S. Commissioner, where he was charged with possessing an unregistered firearm. He had been held in state custody on charges of carrying a concealed weapon.

Defendant was indicted by a federal grand jury and thereafter entered a plea of not guilty, was tried, found guilty and sentenced to 5 years in the custody of the attorney general. Notice of Appeal was filed on May 4, 1965.

The indictment on which defendant was charged reads as follows:

"The Grand Jury Charges:

That, on or about the 29th day of November, 1963 in the Rome Division of the Northern District of Georgia, James Willard Lovelace wilfully and knowingly did possess a firearm, that is a shotgun having a barrel length of 15⅞ inches, which had not been registered by the defendant with the Secretary of the Treasury or his delegates, as required by Section 5841, Title 26 United States Code."

Defendant contends that section 5851, when directed to failure to register firearms according to section 5841, is unconstitutional in that it violates the privilege of the accused against self incrimination.

In Russell v. United States, 306 F.2d 402 (9th Cir. 1962), the information contained the following heading: "26 USCA 5851, Illegal Possession of Firearms, * * *" and charged the defendants with the possession of two shotguns "which they unlawfully, wilfully and knowingly failed to register with the Collector of Internal Revenue for the District in which the said defendants resided."

At the time Russell was alleged to have committed the offense which led to his conviction, section 5851 provided a number of offenses based on unlawful possession of firearms without having complied with statutory regulations in chapter 53 of Title 26 of the United States Code, but it did not contain any provision for an offense based on possession without having complied with section 5841 requiring registration. The Court held that since the information charged the defendants with possession of sawed off shotguns "which they failed to register" the offense was not based on section 5851 as the heading of the information stated, but that it had to be based

on section 5841, requiring all persons having possession of a firearm, as defined in the Act, to register with the Secretary of the Treasury the identity of the firearm and the person having possession of it.

The second sentence of section 5841 provides:

"No person shall be required to register * * * with respect to a firearm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the provisions which applied thereto were complied with."

In vacating Russell's sentence the Court held that section 5841 abridged Russell's 5th amendment privilege against self incrimination, stating:

"It follows that any person who, in conformity with section 5841, registers information concerning a firearm, thereby admits that he is in possession of such firearm, and that he did not acquire or make it in compliance with section 5851." (306 F.2d at 408.

"* * * Russell was required, under section 5841, to provide information as to past conduct (or present status) which was actually or presumptively unlawful." Id. at 410.

Subsequent to the *Russell* case, Congress amended Section 5851 [1] so that at the time the offense in this case allegedly occurred the applicable language of the statute read:

"It shall be unlawful for any person to receive or possess any firearm * * * which has not been registered as required by section 5841."

Since the effective date of the amendment, the Ninth Circuit has decided two cases, Frye v. United States, 315 F.2d 491 (1963), and Starks v. United States, 316 F.2d 45 (1963), in which convictions, based on Section 5851, were upheld.

Both opinions were written by Judge Duniway who sat on the panel in the *Russell* case. Each is distinguishable from the *Russell* case.

In the *Frye* case it was charged that *Frye* and another "had in their possession * * * a firearm * * * which had not been registered with the Director, Alcohol and Tobacco Tax Division." Judge Duniway pointed out:

"The statute makes possession of an unregistered firearm an offense. * * * The defendant in this case was not charged with failing to register the weapon as was the defendant Russell. He was simply charged with possession of an unregistered weapon." 315 F.2d at 494.

Likewise in the *Starks* case the indictment charged that the defendant did "knowingly possess a firearm * * * which firearm had not been registered as required by Section 5841 * * * said possession being in violation of Sections 5851 and 5861 * * *." In upholding the conviction the Court stated in reference to the *Russell* case:

"* * * we held that section 5841, which requires every person possessing a firearm to register it, is unconstitutional because by the act of registering, the possessor necessarily incriminates himself." 316 F.2d at 46.

In differentiating the *Starks* case from the *Russell* case the Court pointed out that:

"Section 5841, considered in Russell, makes it an offense to fail to register, and we held in Russell that to that extent, it is invalid. It is the possession of a gun that no one has registered, not the failure by appellant to register, that is the essence of the offense with which appellant was charged in this case. Appellant did not have to accept or acquire possession of the gun, and when he did so, that gun not having been registered

1. 72 Stat. 1428 (1958).

by anyone, the offense was complete." 316 F.2d at 46.

In Dugan v. United States, 341 F.2d 85 (7th Cir. 1965), the Court stated it was in agreement with Russell v. United States and held that the "registration requirement of § 5841 violates the privilege against self-incrimination established by the fifth amendment to the United States constitution." 341 F.2d at 86. While the information under which Dugan was tried is not set out in full, the language of the Court indicates that the defendant himself was charged with having failed to register as in the *Russell* case and not as in the *Frye* and *Starks* cases where the defendant had been charged with possession of a firearm "which had not been registered."

United States v. Fleish, 227 F.Supp. 967 (E.D.Mich.1964), is a case with facts and decision similar to the *Dugan* case. In passing on section 5841, the Court stated:

> "Every registration in compliance with Section 5841 inevitably incriminates the registrant. Each registration inevitably declares, not an intention to act, but current criminal activity." 227 F.Supp. at 972.

In the case at bar the defendant is charged with possession of a firearm "which had not been registered by the defendant." The offense charged includes not only the possession of a firearm, but also the failure to register by the defendant himself. Such registration would clearly incriminate him as he would thereby have to admit that he was in possession of a firearm which he did not acquire in compliance with section 5851. The offense would not be complete by proof simply that the defendant had a firearm which no one had registered as in *Frye* and *Starks* but would require proof that the defendant himself had not registered it. The District Judge in his charge instructed the jury that the defendant would be guilty of the offense contained in this indictment if he possessed the shotgun "and if the defendant did not register that as required by law * * *." He added that the burden would be on the Government to show that he had not registered the same.

■ The indictment by requiring proof that the defendant himself had not registered the gun has applied section 5851 in an unconstitutional manner. As stated by Judge Rives in Shuttlesworth v. Birmingham Board of Education, 162 F.Supp. 372, (N.D.Ala.), aff'd, 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145 (1958), a statute may be constitutional in itself, but unconstitutional in its application. See also Capooth v. United States, 238 F.Supp. 583 (S.D. Tex.1965).

Other significant alleged errors are without merit but will be discussed. The defendant contends (1) there was unnecessary delay in bringing him before a committing magistrate, and (2) the district judge erroneously admitted the gun into evidence.

With reference to the alleged delay in bringing the defendant before a magistrate, the evidence shows that he was arrested on Friday night by Rome city police, but was not taken before a magistrate during his detention by state authorities. The following Monday morning he was turned over to federal officers who brought him before a United States Commissioner at 1:30 p. m. on the same day.

Rule 5(a) of the Federal Rules of Criminal Procedure [2] requires federal officers to take an arrested person before

---

**2.** Rule 5.

    (a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

a United States Commissioner "without unnecessary delay." In order to enforce this requirement in its capacity as supervisor of the administration of federal criminal justice, the Supreme Court has declared that any statement or confession obtained from a prisoner during a period of unnecessary delay in violation of the rule shall be inadmissible at the defendant's trial in a federal court. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Cf. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

■ Where the federal arrest is preceded by a period of state custody, the claim of unreasonable delay is tested from the commencement of federal detention, McAvoy v. United States, 240 F.Supp. 840 (E.D.La.1965), unless the defendant can show collusion between federal and state officials in frustrating his right to prompt arraignment. Anderson v. United States, 318 U.S. 350, 356, 63 S.Ct. 599, 87 L.Ed. 829 (1943); United States v. Sailer, 309 F.2d 541 (6th Cir. 1962), cert. denied, 374 U.S. 835, 83 S.Ct. 1884, 10 L.Ed.2d 1057 (1963). There was obviously no such collusion here. The federal rule is otherwise inapplicable to a person arrested by state officers on state charges. Edwards v. Holman, 342 F.2d 679, 683 (5th Cir. 1965).

■ Assuming that there was in fact an unnecessary delay in arraigning the defendant, there is no evidence that the defendant made any statement between arrest and arraignment that was later used against him at the trial. Keeping in mind that the principal purpose for speedy arraignment by a judicial officer is to inform the accused "without unnecessary delay" of his privilege against self incrimination, Greenwell v. United States, 119 U.S.App.D.C. 43, 336 F.2d 962, 966 (D.C.Cir. 1964), cert. denied, Greenwell v. Anderson, 380 U.S. 923, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); cf. United States v. Middleton, 344 F.2d 78, 82 (2d Cir. 1965), it is clear that the defendant could not have been prejudiced by the alleged delay without his demonstrating that evidence was extracted from him in violation of his constitutional privilege against self incrimination. Having made no such claim of prejudice, there is no logical reason to overturn the conviction on this ground. See Morse v. United States, 256 F.2d 280 (5th Cir. 1958); United States v. Angelet, 265 F.2d 155, 157 (2d Cir. 1959); cf. United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944).

The defendant's final contention of importance is that the district judge erred in admitting the shotgun into evidence over his objection that its seizure was unreasonable and made without a search warrant and that no probable cause existed to justify his arrest without a warrant.

■ The testimony reveals that the seizure and arrest transpired practically instantaneously, and under this circumstance, we consider them as parts of a single occurrence. See Martin v. United States, 155 F.2d 503 (5th Cir. 1946); United States v. Sorce, 325 F.2d 84, 86 (7th Cir. 1963), cert. denied, 376 U.S. 931, 84 S.Ct. 701, 11 L.Ed.2d 651 (1964). A search without a warrant incidental to a valid arrest is not unreasonable, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); United States v. Ventresca, 380 U.S. 102, 107 n. 2, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), and it makes no difference which came first so long as they occurred practically simultaneuosly.[3] Fernandez v. United

---

3. The Seventh Circuit has soundly reasoned:

"When probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction. To hold differently would be to allow a technical formality of time to control when there has been no real interference with the substantive rights of a defendant." Holt v. Simpson, 340 F.2d 853, 856 (7th Cir. 1965).

States, 321 F.2d 283, 287, n. 8 (9th Cir. 1963); Busby v. United States, 296 F.2d 328, 332 (9th Cir. 1961), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962); Holt v. Simpson, 340 F.2d 853, 856 (7th Cir. 1965).

■ The approach we must follow was indicated by the Supreme Court in Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964):

> "There are limits to the permissible scope of a warrantless search incident to a lawful arrest, but we proceed on the premise that, if the arrest itself was lawful, those limits were not exceeded here. * * * The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."[4] 379 U.S. at 91, 85 S.Ct. at 225.

Moreover, since the arrest was made by local authorities for the state offense of carrying a concealed weapon,[5] the validity of the arrest must also be examined under Georgia law. Ga.Code Ann. § 27–207.[6]

■■ According to the testimony at the trial, the officers received a message from the operator of the cafe that the defendant was reportedly carrying the weapon.[7] This information, admittedly based on hearsay, cannot by itself satisfy state or federal standards for arrest without a warrant, but the fact that information is hearsay "does not destroy its role in establishing probable cause" when reliable corroborative information is acquired. See Ker v. State of California, 374 U.S. 23, 36, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726 (1963); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Officer Eury, the patrolman who seized the shotgun, observed the defendant come out of a backroom "walking kind of funny and holding his leg." This was

---

4. For a recent application of this approach, see Nicholson v. United States, 355 F.2d 80, 82–83 (5th Cir. Jan. 18, 1966).

5. Ga.Code Ann. § 26–5101 reads:
   "Any person having or carrying about his person, unless in an open manner and fully exposed to view, any kind of metal knucks, pistol, dirk, sword in a cane, spear, bowie knife, or any other kind of knives manufactured and sold for the purpose of offense and defense, shall be guilty of a misdemeanor."

6. The section reads:
   "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant."

7. The pertinent testimony of the cafe operator reads:
   Q. You say that somebody told you that he had a gun on him,—
   A. Yes sir.
   Q. —is that correct?
   A. Yes sir.
   Q. Did you tell the officers that when you called them?
   A. Yes sir.
   Q. In other words, you put the officer on notice then—
   A. Yes sir.
   Q. —that you thought that this man had a weapon on him, and you wanted them to come up there and see about that, is that correct?
   A. Well, this fellow, he came to me and told me he had a gun on him, so I sent Jerry Goble down to the Bumble Bee where they were at and they brought them back up there.
   Q. And that was the information the officers had,—
   A. Yes sir.
   Q. —that he had, he did have a gun on him?
   A. Yes sir.

about the time the cafe was closing for the night. The officer testified that:

"A. * * * just as he stepped out of the door on the sidewalk I saw the shotgun barrel in the breeches leg.

Q. You saw the shotgun barrel before you did anything?

A. Yes.

Q. Saw it drop down his pants leg?

A. Yes, sir.

Q. What took place then?

A. I told Pope he had a shotgun and I disarmed him and Mr. Pope covered him."

On cross-examination, defendant's counsel sought to question the accuracy of the officer's perception of the gun barrel:

"Q. And you say this is while he was on the outside of the building that you saw this gun barrel?

A. Just as his right foot hit the sidewalk.

Q. And then when you saw this barrel or whatever it was, did you know what it was of your own knowledge?

A. Yes sir.

Q. How much of it did you see, Mr. Eury?

A. I saw about that much of the barrel (indicating).

Q. You saw that much of the barrel?

A. Yes sir.

Q. And it was sticking out like that?

A. It fell down on his shoe and I grabbed it before it hit the pavement.

Q. Did you know whether it was a piece of iron or a gun barrel?

A. To my knowledge it was a gun barrel.

Q. How could you tell it was a gun barrel without examining it?

A. That was the first impression I got.

Q. That was just your impression, but actually, the truth of the matter is you didn't know what it was until you got it out?

A. I couldn't swear under oath.

Q. And you didn't know what it was? It could have been a piece of pipe for all you knew at that time?

A. Could have been at that time."

■ As the testimony clearly demonstrates, the officer observed the barrel drop down the trouser leg and definitely believed it to be a shotgun. Viewing the inferences drawn from the evidence in a light most favorable to the Government, as a reviewing court is compelled to do, Manuel v. United States, 355 F.2d 344, 346 (5th Cir. Jan. 31, 1966); United States v. Zimmerman, 326 F.2d 1, 3 (7th Cir. 1963), we believe that the officer reasonably concluded that the defendant was carrying a shotgun in his "breeches" once he saw part of the barrel drop down his pants leg.

In United States v. Paradise, 334 F.2d 748 (3d Cir. 1964), a policeman's observation of the butt of a gun sticking out of a bag on the front seat of a car was found sufficient to justify its seizure and establish probable cause for an arrest.

Similarly, in the recent decision in Miller v. United States, 356 F.2d 63 (5th Cir. Feb. 1, 1966), a seizure of military weapons partially covered by a "Dearborn stove" was upheld as reasonable because the muzzles of the weapons were in plain view. Although in that case the weapons were not elements of the probable cause on which the arrest was based, the principles stated there by Judge Gewin are equally appropriate here:

"We are not dealing with a factual situation primarily involving a search. To observe that which is open to view is not generally considered a 'search.' * * * No 'search' was necessary to uncover the evidence. Such being the case, we find no merit in the argument that an unreasonable 'search' was consummated by the Dallas patrolmen.

\* \* \* Moreover, even if there was a 'search' in a technical sense, the officers were justified in looking into the Thunderbird and taking possession of the weapons lying on the floor since at least a portion of them was clearly visible." 356 F.2d at 68–69.

The gun barrel was clearly visible to the Rome police officers as it fell through the defendant's trouser leg and Officer Eury testified that he promptly identified the falling object as part of the shotgun. The officer's admission on cross-examination that the gun barrel he observed could have been nothing more than a piece of pipe does not detract from his testimony that he did in fact believe that what he perceived was the barrel of a shotgun. The Supreme Court has indicated on several occasions that the quantum of information necessary to establish probable cause is not as great as would be required to convict beyond a reasonable doubt. Brinegar v. United States, 338 U.S. 160, 174, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). See also Manuel v. United States, 355 F.2d 344 (5th Cir. Jan. 31, 1966).

We conclude that the federal requirement of probable cause was fully satisfied by the officers at the time of the defendant's arrest.

Our examination of Georgia law indicates that the police officers also satisfied Georgia's requirements for arrest without a warrant. A pertinent state court decision is Phelps v. State, 106 Ga. App. 132, 126 S.E.2d 429 (1962). In that case, the Georgia Court of Appeals upheld an arrest without a warrant based on commission of an offense in the presence of the officers where they observed a bulge in the defendant's pockets after receiving information from the victim of the shooting that the defendant may have fired the weapon that caused his injury. The officers "patted him," and seized the gun. In the case at bar, the arresting officer relied not merely on a tip from an informant or a pocket bulge as in Phelps, but personally observed the barrel of the shotgun. The officers were clearly justified under Georgia law as well as under federal law in arresting the defendant for carrying a concealed weapon.

The shotgun was properly admitted into evidence at the defendant's trial.

For the reason that section 5851 of Title 26 as applied in the indictment and by the Court in its charge is unconstitutional in that registration required by the defendant himself as part of the offense necessarily incriminated him, the case is reversed and remanded.