**William Ernest FRYE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18145.**

United States Court of Appeals
Ninth Circuit.

March 27, 1963.

Hillel Chodos and Sheldon G. Bardach, Beverly Hills, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, and Norman T. Ollestad, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before JERTBERG and DUNIWAY, Circuit Judges, and ROGER T. FOLEY, Senior District Judge.

DUNIWAY, Circuit Judge.

Frye appeals from his conviction, following a trial by the court, under a one-count indictment which charged that he and one Barr had in their possession a 12-gauge shot gun with an 8-inch barrel, a firearm as defined in 26 U.S.C. § 5848, which had not been registered with the Director, Alcohol and Tobacco Tax Division, Washington, D. C. The offense is a violation of 26 U.S.C. § 5851. Barr was acquitted by the court.

Frye makes two contentions:

1. That the evidence against him was obtained as a result of an unreasonable search and seizure, and

2. That section 5851 is unconstitutional, when read with section 5861, because it violates the due process clause of the fifth amendment to the Constitution and is also unconstitutional because it violates the eighth amendment to the Constitution. We conclude that Frye's conviction must be affirmed.

The evidence, stated most favorably to the government, discloses that Frye and Barr were arrested on March 22, 1962 by a motorcycle policeman of the city of Monterey Park, California. The police-

man was stationed at a principal intersection in the town, at about half past eleven in the morning, when he saw Frye driving a car in which Barr was a passenger. One of the tail lights of the car was broken, and the car was emitting excessive smoke and making excessive noise. The policeman followed the car, directed the driver to pull over to the curb, dismounted from his motorcycle, approached the driver and asked for his operator's license. Frye produced a temporary license. The policeman, considering that this was inadequate identification, because a temporary license can readily be obtained and is easily altered, asked for additional identification. Frye then produced a registration as an ex-convict. (This was apparently required by the adjoining County of Santa Ana [sic—should be Orange]). The policeman observed numerous tools lying on the floor in the back of the car, including wrenches, screw drivers, pliers and a "prybar." He asked Frye his occupation, and Frye stated he was a maintenance man presently unemployed and seeking employment.

The policeman and Frye then walked to the rear of the car where the policeman called Frye's attention to the smashed tail light, and asked to examine the interior of the trunk. Frye voluntarily opened the trunk and the policeman checked it, finding nothing. The trunk was then closed by Frye. At this point Barr left the vehicle and asked the policeman "Is this a routine stop or were you on call?" He was told that it was a routine stop. The policeman asked Barr for identification, which was produced, and he then asked Barr what he had been arrested for, receiving a reply that he had been arrested twice in the State of Arizona, "once for fighting and once for drunk."

The three men then stepped to the passenger side of the vehicle and the officer observed that the pupils of both men's eyes were "very pinpointed," and he asked if they used narcotics. Both men said no, and displayed their arms for the purpose of showing that there were no marks on them. In order to do this Barr removed his jacket and the policeman then saw two shotgun shells sticking out of the pocket of Barr's "Levis." He asked Barr what he was doing with them and Barr said that he had done some trap shooting a couple of days before and had left the shells in his pocket. The policeman then asked Frye whether he had a weapon in the vehicle. The reply was "No, why should I have a weapon in the vehicle?" The policeman asked "if it would be all right if I looked through the car, and he said 'yes, go ahead,' at which time * * * I reached under the front seat * * * and I felt a metal object. I pulled this object out and it was a sawed-off shotgun." He then placed both men under arrest. He summoned help and when help arrived, the men were searched. The gun was loaded. Two shotgun shells were found in Frye's pocket and two boxes of shotgun shells were found in the glove compartment of the car. On cross-examination, the policeman also stated that Frye had told him that he was on probation for burglary.

The gun and the shotgun shells were duly identified and offered in evidence at the trial. Before trial, counsel made a motion to suppress the evidence, and this motion was renewed at the trial. The court denied it. The court made special findings in which it found substantially all of the foregoing facts and concluded that the search was incident to a lawful arrest. The government offered affirmative proof, by a Certificate of Non-Registration from the appropriate authorities, to show that the gun was not registered as the law requires.

It should also be stated that Frye took the stand and testified that the officer obtained his registration as an ex-convict without his consent and by snatching his wallet out of his hand, and that he did not consent to a search of the vehicle. In view of the court's findings, it is obvious that the court did not believe him.

■ While it is true that the "silver platter" doctrine has recently been abolished, (Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, and Rios v. United States, 1960, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688), it is also still true that a search to which voluntary consent is given is not an unlawful search and evidence thereby obtained is admissible. This matter was recently considered by this court in United States v. Page, 9 Cir., 1962, 302 F.2d 81. We conclude that the trial court's findings are not clearly erroneous, and that the evidence was properly received. We think that while the federal courts must, under the ruling of the Supreme Court in the Elkins and Rios cases, supra, apply federal constitutional principles to searches and seizures made by state officers when evidence obtained thereby is offered in a federal prosecution, the federal courts should not lose sight of the fact that a local policeman is in a somewhat different position from a federal law enforcement officer. The duty of the federal officer is to enforce specific federal statutes; the local policeman, in addition to having a duty to enforce the criminal laws of his jurisdiction, is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so. If a federal officer had done what the policeman did here, his actions could be said to be officious meddling and without justification. If such actions had resulted in a consent to his search of the car, we would have a different case. We need not consider whether the result might also be different. The present case, we think, involves an example of excellent police work by a local officer, not subject to any constitutional attack.

■ We cannot hold that section 5851 is unconstitutional as it was applied in this case. The language to which the constitutional objection is directed reads as follows: "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury." The trial court construed this language as not dispensing with proof that the firearm had not been registered and, as we have seen, the government supplied this proof. We think that as so construed, the statute is not open to the attack made upon it. So construed, the quoted sentence does not create a presumption that the gun was not registered, and we need not consider whether the statute would be valid if it did create such a presumption. The statute makes possession of an unregistered firearm an offense. Both elements were proved, and the court construed the statute as requiring that they be proved. The portion of the statute attacked added nothing to the government's case in this instance. (See United States v. Decker, 6 Cir., 1961, 292 F.2d 89, 91). Our recent decision in Russell v. United States, 9 Cir., 1962, 306 F.2d 402, is not in point. The defendant in this case was not charged with failing to register the weapon as was the defendant Russell. He was simply charged with possession of an unregistered weapon. We think there is nothing in the point that the statute imposes cruel and unusual punishment in violation of the eighth amendment. Nothing in the record supports the further assertion that the statute is solely directed at, or enforced only against, persons suspected, but not convicted, of general criminality. Yick Wo v. Hopkins, 1885, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220, is thus not in point.

Affirmed.