**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thurman Jeff WEST, Defendant-Appellant.**

**No. 71-3480**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

May 23, 1972.

Michael J. Romeo, Birmingham, Ala., for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., Albert C. Bowen, Jr., Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

West appeals from a judgment entered on a jury verdict of guilty of a violation of 26 U.S.C.A. §§ 5861(d) and 5871, under which he was charged with willfully

* ■ Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

and knowingly possessing a firearm, i. e., a weapon made from a 20-gauge single-barrel Savage Arms Company Shotgun, with a barrel length of less than 18 inches and an overall length of less than 26 inches which had not been registered to West in National Firearms Registration and Transfer records as required by Chapter 53, Title 26, United States Code. We affirm.

West contends that his arrest for highway intoxication was illegal because he was not in violation of the Alabama law. He argues that the deputy sheriff used this as a pretext to search his automobile and thus it was error for the court to deny his motion for an order suppressing the shotgun as evidence.

We find it unnecessary to reach the question whether the arrest was illegal under Alabama law. The deputy, on regular patrol, received a radio dispatch about one o'clock in the morning to investigate a car in a ditch at a specified location. When he arrived he found a white 1968 Chevrolet automobile in the ditch, on which they were many decals, a siren and a red flashing light mounted on it. The right side of the car was against a bank and the front door on the driver's side was open.

The deputy saw West standing behind the car and asked him if he needed help. West replied that he had already sent for help and that a truck was on the way. The deputy then heard the voice of the Alabama Highway Patrol dispatcher emanating from a radio in the car. This prompted him to ask West if it was the state monitor on the state trooper frequency. West's retort was, "Is it against the law to have one?" The deputy replied that it was not against the law, but that he was curious about it. West told him that "It is none of your damned business what it is." The deputy arrested West for highway intoxication and put him in the patrol car under the guard of a reserve deputy and returned to West's car to identify the other occupant.

The deputy shined his flashlight into the car and asked the occupant seated in the front passenger side his name. He observed the occupant slip a small bottle under the front floor mat and then the occupant told the deputy that he did not have to disclose his name. The deputy ordered him out of the car and as the occupant started to move, his right hand passed near an open glove compartment containing a pistol, which was clearly visible. The deputy drew his revolver and as the occupant started to slide across the seat to get out on the driver's side the deputy scanned the floorboard area and observed a sawed off shotgun protruding from under the front seat. The occupant was placed under arrest and the sawed off shotgun, the bottle of pills and the pistol were seized. The shotgun was loaded and four other shotgun shells were found in the glove compartment.

■ We pretermit the question of whether or not there was a lawful arrest, or whether the deputy had probable cause, for there can be no question but that he not only had a right to investigate but a duty to do so. He answered an official call, found a car with a police radio monitor, a siren, and a flashing red light mounted on it, which had been driven into a ditch in the middle of the night by a driver who gave evasive answers to routine questions. He further found a passenger who refused to identify himself but who made furtive movements to hide a bottle and go for a pistol in an open glove compartment. Under these circumstances,

"We think that while the federal courts must, * * * apply federal constitutional principles to searches and seizures made by state officers when evidence obtained thereby is offered in a federal prosecution, the federal courts should not lose sight of the fact that a local policeman is in a somewhat different position from a federal law enforcement officer. The duty of the federal officer is to enforce specific federal statutes; the lo-

cal policeman, in addition to having a duty to enforce the criminal laws of his jurisdiction, is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so."
Frye v. United States, 9 Cir. 1963, 315 F.2d 491, 494.

 It is perfectly clear that the deputy observed the sawed off shotgun through an already open door of West's automobile. The deputy had a right to be there. Since the shotgun was in "plain view" the seizure was lawful and was not the product of an unlawful search in violation of the Fourth Amendment. United States v. Drew, 5 Cir. 1971, 451 F.2d 230; United States v. Davis, 5 Cir. 1970, 423 F.2d 924; Marshall v. United States, 5 Cir. 1970, 422 F.2d 185; Nunez v. United States, 5 Cir. 1967, 370 F.2d 538.

Finally, West asserts that it was error for the Court to permit the prosecutor to ask the defendant's character witness on cross examination whether he "ever heard that his filling station and garage there was the disseminating point for stolen automobiles?" Out of the presence of the jury the prosecutor told the court that he had a factual basis for the rumors inquired about. West nevertheless argues that disclosure of the Government's intended interrogation should have been made to the court prior to cross-examination and the court should have instructed the jury at the time the testimony was given. Furthermore, West argues that the instruction the Court gave during his final charge, concerning the cross-examination of the character witness, was insufficient.

We endorse, as the better practice, an *in camera* showing prior to cross-examination, that the prosecution has, in good faith, some factual basis for the rumors to be inquired about. The court is thus in a position to exer-

cise its judicial discretion before the matter is presented to the jury. Gross v. United States, 8 Cir. 1968, 394 F.2d 216; United States v. Beno, 2 Cir. 1963, 324 F.2d 582, cert. denied, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 86; United States v. Giddins, 2 Cir. 1960, 273 F.2d 843, cert. denied, 362 U.S. 971, 80 S.Ct. 955, 4 L.Ed.2d 900; Malatkofski v. United States, 1 Cir. 1960, 179 F.2d 905. The court made it abundantly clear to the jury in this case, however, that the purpose of the prosecutor's questions to the character witness was to impeach the witness and that they were to disregard any other inference from the question asked because there was no evidence whatsoever that West had committed any other offense. The limiting instruction concerning the one cross-examination question objected to was specific, unequivocal, and adequate. We perceive no reason why the jury could not or did not understand and follow it. The judgment of the district court is

Affirmed.