**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herbert Lee ROLLERSON, Defendant-
Appellant.**

**No. 73–2363.**

United States Court of Appeals,
Fifth Circuit.

March 27, 1974.

James R. Harris, Corpus Christi, Tex. (Court-appointed), for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BELL, THORNBERRY and DYER, Circuit Judges.

DYER, Circuit Judge:

Rollerson was convicted for knowingly possessing an unregistered firearm in violation of 26 U.S.C.A. §§ 5845(a) and 5861(d). In this appeal, he raises three points of claimed error. First, he argues that the firearm was improperly admitted into evidence since it was obtained by police officers who unlawfully stopped his car solely on the basis of a complaint by a citizen, previously unknown to the police, that Rollerson had used the weapon to threaten the complainant's life. Second, he contends that the district court should have granted his motion to suppress a confession obtained by a federal agent because of unreasonable delay in being brought before a magistrate. Finally, he asserts that he is entitled to inspect his presentence report and to have a hearing to correct erroneous factual information relied upon by the court in the imposition of his sentence. We affirm.

In the early morning hours of October 30, 1971, Albert Williams was awakened by a roommate's report that Rollerson had come to shoot him. Rollerson circled Williams' residence, told Williams to come outside to "get it over with," and underscored his threats with two shots from a sawed-off rifle. Williams left his residence by a back door and called the police, but Rollerson had left by the time they arrived.

About 9:00 p. m. on the same date, Williams was driving home from work when he was warned that Rollerson, gun in hand, was sitting on Williams' steps. Though Williams could not see Rollerson, he did see Rollerson's white station wagon parked in front of Williams' home. Williams immediately turned around and drove to the police station. While Williams was describing the situation to two Corpus Christi police officers, a white station wagon, identified by Williams as Rollerson's, was seen driving by the police station. Although Williams was unknown to the policemen prior to his complaint, on the basis of the information supplied by him, the officers pursued and stopped the Rollerson auto. One policeman approached the car from the driver's side, and the other from the passenger's side. Directing a flashlight beam into the front of the car

where Rollerson was sitting, one officer saw the barrel of a rifle protruding from beneath the seat. Since a local ordinance forbade carrying a weaon in a vehicle, the officers placed Rollerson under arrest. The ensuing police examination of the gun indicated a possible violation of the federal firearms law. A report was made to the United States Treasury Department, Division of Alcohol, Tobacco, and Firearms (ATF), and the next day a special agent examined the seized weapon, found it to be an inch shorter than permitted without federal registration, and filed a complaint against Rollerson.

A federal warrant for Rollerson's arrest was issued the same day, November 1, 1971, and a detainer was placed on him as a state-held prisoner. The following day, the ATF investigator interviewed Rollerson. After being given *Miranda* warnings and being advised that a federal complaint had been filed against him for possession of an unregistered firearm, Rollerson admitted ownership of the weapon. On November 17, when the local authorities decided not to prosecute the city ordinance violation, Rollerson was turned over to federal authorities and was taken immediately before a United States magistrate.

After a jury trial, Rollerson was found guilty of violating the federal firearms law.[1] During sentencing, the district judge stated: "All right, while you don't have any convictions, you have been arrested several times with regard to matters pertaining to guns." Rollerson made a motion for production of the presentence report pursuant to F.R. Crim.P. 32(c)(2) and for a hearing on a Rule 35 motion for reduction of sentence on the ground that the district court relied on inaccurate information in imposing sentence. Rollerson offered to show that although he had an arrest record, he had had no previous arrests involving guns. In denying the motions, the district judge said:

> The Court has considered the motion of the Defendant and has concluded that the seriousness of the offense alone justified the two-year sentence and the very short five-months' period of incarceration. Further, assuming the complained of statement was inaccurate, the Court is satisfied there is no reason to reduce the sentence given. Thus, nothing would be gained at this time in furnishing the pre-sentence investigation to Defendant.

■■ Rollerson's first contention on appeal is that the sawed-off rifle should not have been introduced into evidence since it was seized in violation of the fourth amendment. The firearm was in plain view once the police had stopped the auto and peered inside, hence the crucial question is whether the act of stopping the automobile was an unreasonable seizure. The thrust of Rollerson's argument is that the police lacked probable cause to justify the stop because of the unproven reliability of the complainant's information. This is a sophistical contention. Neither the tests of reliability demanded for a showing of probable cause nor, indeed, a showing of probable cause is required to justify an investigative stop. Unlike an anonymous informant, the complainant in the case before us came forward personally to request a police investigation. Moreover, the person giving the information was himself the victim of threats on his life. Under these circumstances the police were not only justified in making their limited intrusion into Rollerson's liberty by stopping his automobile to investigate the suspicion engendered by the complaint, Adams v. Williams, 1972, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; United States v. Allen, 5 Cir. 1973, 472 F.2d

---

1. 26 U.S.C.A. § 5861(d) requires registration of firearms described in 26 U.S.C.A. § 5845 (a). It is not disputed that Rollerson's weapon was within the definition of § 5845 (a).

145, but they would have been derelict in their duty had they failed to do so. What we said in United States v. West, 5 Cir. 1972, 460 F.2d 374, is apropos here:

> We think that while the federal courts must \* \* \* apply federal constitutional principles to searches and seizures made by state officers when evidence obtained thereby is offered in a federal prosecution, the federal courts should not lose sight of the fact that a local policeman is in a somewhat different position from a federal law enforcement officer. The duty of the federal officer is to enforce specific federal statutes; the local policeman, in addition to having a duty to enforce the criminal laws of his jurisdiction, is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so.

*Id.* at 375–376, *quoting* Frye v. United States, 9 Cir. 1963, 315 F.2d 491, 494.

▮▮▮ The second point raised by Rollerson is that the confession given to the federal investigator on November 2, 1971, should have been suppressed because Rollerson was not taken before a magistrate until November 17, 1971. In support of this position, he relies on Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 and 18 U.S.C.A. § 3501(c).[2] *Mallory* and Section 3501(c) were carefully considered by the Sixth Circuit in United States v. Davis, 1972, 459 F.2d 167. There the court found that the delay in

being brought before a magistrate must be measured from the beginning of *federal* detention. *See also* Grooms v. United States, 8 Cir. 1970, 429 F.2d 839. We agree. Since Rollerson was in state custody during the time of the interview by the federal investigator, for Rollerson to prevail it is incumbent upon him to demonstrate an illegitimate "working relationship" between the state and federal authorities. Anderson v. United States, 1943, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829. That is, in order to invoke the protection of Section 3501(c), he must show that the state officials unlawfully detained him in order to allow the federal investigator to secure a confession. Kulyk v. United States, 5 Cir. 1969, 414 F.2d 139. Although the state authorities decided not to prosecute Rollerson for violating the city weapons ordinance, there is nothing to support Rollerson's assertion that he was being held by state authorities to await the federal investigator. Rather, it appears that Rollerson was unable to post bond to obtain his release during the pendency of the local charge. When the decision was made on November 17, 1971, not to prosecute the ordinance violation, Rollerson was turned over to the custody of the United States Marshal, who immediately took him before a federal magistrate. Thus there was no delay which would necessitate suppression of the confession.[3]

▮▮▮ Rollerson's final contention is that the district court should have permitted him to inspect the presentence report and should have given him an opportunity to rebut erroneous factual information relied upon in the imposition of his sentence. Clearly, it is a violation

**2.** 18 U.S.C.A. § 3501(c) provides in pertinent part:

> In any criminal prosecution by the United States . . . a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer . . . shall not be inadmissible solely because of delay in bringing such person before a magistrate . . . if such confession is found by the trial

judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention. . . .

**3.** Because we reject the unreasonable delay argument, it is unnecessary to discuss the suggestion that the voluntariness of the confession was tainted by delay.

of due process to sentence a defendant on the basis of assumptions concerning his criminal record which are materially untrue. United States v. Tucker, 1972, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592; Townsend v. Burke, 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690. As we pointed out, however, in Rogers v. United States, 5 Cir. 1972, 466 F.2d 513, cert. denied, 409 U.S. 1046, 93 S.Ct. 546, 34 L.Ed.2d 498, it is the burden of the one who challenges a sentence to demonstrate that it was founded upon a tainted record. In *Rogers*, the appellant was unable to make the requisite showing of the court's reliance since the record failed to disclose explicit consideration of an allegedly invalid conviction. Similarly, this court in United States v. Trevino, 5 Cir. 1973, 490 F.2d 95 denied relief because the appellant failed to show reliance by the court on misinformation, and failed to show that the appellant either specifically denied the truth of the information or requested an opportunity for rebuttal. Assuming that such threshold requirements can be satisfied, our decision in United States v. Battaglia, 5 Cir. 1972, 478 F.2d 854, demonstrates that once the possibility of reliance on erroneous information or reliance on an invalid conviction has been raised, an unexplained statement by the court that it would have imposed the same sentence regardless of the original error is insufficient to dispel the lingering doubt that the sentence was founded upon illegitimate considerations. In such cases the defendant must be given an opportunity to rebut the factual error, United States v. Espinoza, 5 Cir. 1973, 481 F.2d 553, or the Government must be required to carry its burden of showing the constitutionality of prior convictions, Mitchell v. United States, 5 Cir. 1973, 482 F.2d 289.

In Rollerson's case, however, we think any factual error was harmless. He was sentenced to a mere five months in prison and four years' probation when the maximum penalty for his offense was ten years' imprisonment. We are satisfied that the seriousness of his offense, without more, was sufficient to justify the sentence given. Stated another way, even if Rollerson's record was devoid of prior arrests for firearm-related offenses, his light sentence is amply justified.

Affirmed.