**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stanley Eugene BOYD,
Defendant-Appellant.**

**No. 75–2040.**

United States Court of Appeals,
Fifth Circuit.

May 3, 1976.

Tuttle, Circuit Judge, dissented and
filed an opinion.

Harold N. Wollstein, Rome, Ga., and
Benjamin T. White, Atlanta, Ga. (Court-
appointed), for defendant-appellant.

John W. Stokes, U. S. Atty., Glenna L.
Stone, Asst. U. S. Atty., Atlanta, Ga., for
plaintiff-appellee.

Appeal from the United States Dis-
trict Court for the Northern District of
Georgia.

Before TUTTLE, GODBOLD and
GEE, Circuit Judges.

GODBOLD, Circuit Judge:

Defendant was convicted of interstate
transportation of stolen firearms, 18
U.S.C. § 922(i), and possession of a fire-
arm by one previously convicted of a
felony, 18 U.S.C. App. § 1202. The ma-
jor point on appeal concerns admissibility
of weapons which came into possession
of arresting officers following an al-
legedly illegal arrest.

On October 13, 1974, on a road near
Cedartown, Georgia, two Georgia state
troopers were conducting a routine check
of vehicles for the purpose of examining
drivers' licenses, license tags, and state

inspection stickers.[1] Defendant does not question the validity of the inspection activity.

Defendant drove up in a well-worn 1959 Edsel. When a trooper asked for his driver's license, defendant handed him a license and told him his name was misspelled on it. The trooper checked for license plates and found mounted on the rear of the car a 1974 Alabama plate, No. 13–10345, and also saw in the rear window of the car a crude cardboard "tag" lettered "Alabama 74" and bearing the number 11 52479. As the officer was checking the license plate he saw several shotguns and rifles [five, as it turned out] on the rear seat, exposed to plain view. The trooper commented to defendant about one "nice looking" shotgun. He asked and received defendant's permission to examine the weapons, and did examine them. Whether they were taken from the car and put back or merely visually examined through the window is unclear but irrelevant. As the trooper finished looking at the guns he saw in plain view on the front seat a bottle of liquor with the seal on it broken. He reached through the open window, picked up the bottle, and examined it. It bore no Georgia tax stamps as required by state law. It is not clear whether the trooper saw that the stamp was absent before or after he reached through the window and picked up and examined the bottle.

■ The trooper arrested defendant for possession of non-taxpaid liquor. He and his car were taken to the county jail in Cedartown where he was booked and jailed on that charge. His car was parked on a public street outside the county courthouse. There is testimony that the car was locked, other testimony that it was not locked. The guns were removed from the car for safekeeping and locked in an office in the courthouse.

The removal violated no rights of the defendant. Indeed, even if the car was locked, the officers might have been liable had the guns, open to public view through the car window and on the public street, not survived the night.

Local officers notified federal agents that they were suspicious of the guns, and federal officers examined them. It turned out that they had been stolen in South Carolina two days before defendant was arrested. The instant federal charges were brought, and the guns were introduced in evidence at defendant's trial.[2]

■ The guns were not the fruit of an illegal arrest. Defendant does not question the initial stop, so we analyze events occurring after the stop. On examination of those events, we conclude that the trooper could arrest for the offense, committed in his presence, of possession of non-taxpaid liquor. Without regard to whether the officer observed the absence of a stamp before he reached through the car window and picked up the bottle, or only after he had it in his possession, he did not violate defendant's Fourth Amendment rights. Having made a valid investigatory stop on other and unrelated grounds he had come into possession of additional information that permitted, and indeed mandated, that he make some further minimal investigation. U. S. v. West, 460 F.2d 374 (CA5, 1972); Frye v. U. S., 315 F.2d 491, 494 (CA9, 1963). Cf. U. S. v. Rollerson, 491 F.2d 1209 (CA5, 1974). The complex of facts which we have set out were highly suspicious in a general sense. And, in a more specific sense, various possible combinations of liquor, car and guns posed threats to highway safety and to the community at large that a peace officer neither could nor should ignore. If there was any invasion of privacy arising from the cursory scrutiny of the exterior of a

---

1. They had arrested a person for DWI and conducted the inspections while awaiting assistance to remove the car of the arrested driver.

2. The guns were the fruits of burglaries of two homes that had occurred on October 11 in South Carolina, in which guns and jewelry had been taken. A black Edsel was observed on the scene of one burglary. Defendant was wearing a ring taken from one of the homes. On October 12, 1974, defendant attempted to sell a shotgun and jewelry to a waitress in Rome, Georgia.

bottle open to public view, it was minimal and was well within the range of what the officer constitutionally could do when alerted by the suspicious circumstances that existed.

■ Appellate counsel for the defendant has made a stringent and overenthusiastic attack on alleged ineffectiveness of trial counsel. In large part this is not based on matters of record but on unsworn statements of the defendant made in an outburst at trial and on inferences drawn by appellate counsel from matters that he considers should be in the record but are not. Insofar as shown by the record before us, there is no ineffectiveness of counsel. Insofar as claims are asserted based on extrinsic matters, they are not properly before us.

AFFIRMED.

TUTTLE, Circuit Judge (dissenting):

With deference I dissent. In my judgment the record fully warrants a conclusion that the jury could have found, as it apparently did, that the appellant was a bad actor and that he was guilty of having in his possession guns which had very recently been stolen in an adjoining state. I can, therefore, share with my colleagues their reluctance to reverse the conviction by holding that the evidence on which it was based should have been excluded by the trial court. Nevertheless, the rule which is implicit in the Court's decision that Boyd's arrest under the circumstances was not illegal[1] so far erodes recognized standards for a warrantless arrest that I feel that I must dissent.

The majority says:

Without regard to whether the officer observed the absence of a stamp before he reached through the car window and picked up the bottle, or only after he had it in his possession, he did not violate defendant's Fourth Amendment rights."

The Court based its approval of the arrest on the theory that the arresting officer was conscious of Boyd's committing the offense of being in possession of non tax-paid liquor in his presence. The trouble with this theory is that the Court says that this would be true even though the officer had reached into the automobile and removed the bottle of liquor before he could know that an offense was being committed. By this standard, an illegal seizure is made, which permits the officer then to know that the owner of the property seized is guilty of an offense. Thereupon, an arrest is legal, and the subsequent seizure and investigation of the five weapons is permissible as a part of the police officer's desire to prevent the arrestee's property from being stolen.

While I would not dissent, in the present state of the law, from the decision of the Court that the seizure of the weapons, after a legal arrest had occurred would be permissible, it is my view that the exception to the Fourth Amendment requirement of a warrant before an arrest that an officer may arrest a person who is committing a crime in his presence cannot be extended by permitting the officer to show that he was aware that a crime was being committed because he had previously made an illegal search and seizure to learn of the facts upon which he based his conclusion.

The cases of *U. S. v. West*, 460 F.2d 374 (C.A. 5, 1972) and *U. S. v. Rollerson*, 491 F.2d 1209 and the Ninth Circuit case which is referred to in both of them, *Frye v. United States*, 315 F.2d 491, 494 (C.A. 9, 1963) deal with an entirely different state of facts. In *West* and *Rollerson* the officer immediately knew of the commission of an illegal offense of the accused by seeing a sawed-off shotgun in one instance and in the other seeing a rifle under circumstances which, by its very presence, demonstrated a violation of the state's criminal statutes. The quotation from *Frye* in both *West* and *Rollerson* clearly indicates that

---

1. Of course, if his arrest was illegal, then the seizure of the guns and the case made around them were the fruits of the illegal arrest.

whatever additional responsibility state police officers have with respect to keeping the local peace, they are required to do it in a manner that is consistent with the United States Constitution. I do not understand that the Court means to do away with the requirement of probable cause or a knowing observance of the commission of a crime in the officer's presence and substitute a standard of "highly suspicious" circumstances as the basis for making an arrest. I simply can't believe that the Court intends to say that the presence of a half-pint liquor bottle with the seal broken on the front seat of an automobile and several guns in plain view on the back seat create a situation which, in and of themselves, can be the basis of an arrest or seizure of either the bottle of liquor or the guns. All this is what the Court seems to say when it says that "in a more specific sense, various possible combinations of liquor, car and guns posed threats to highway safety and to the community at large that a peace officer neither could nor should ignore." Here, it seems clear beyond any question that the police officer searched and seized without a warrant and without probable cause when he reached into the automobile and took out the bottle of liquor before he was able to determine whether a state crime was being committed in his presence. Such search and seizure is blandly dismissed by the statement:

> "If there was any invasion of privacy arising from the cursory scrutiny of the exterior of a bottle open to public view, it was minimal and was well within the range of what the officer constitutionally could do when alerted by the suspicious circumstances that existed."

Of course, this language implies that the scrutiny of the exterior of the bottle, being "open to public view" could be made without the officer removing it from the automobile. This, of course, however, was not the case. He did remove it and thereupon made the arrest. In order to test the validity of the standard which the Court has now adopted we view it in context with the Court's statement that it was immaterial whether he could detect the absence of a Georgia state stamp without removing the bottle and examining it. Of course, the burden of supporting a warrantless arrest is on the Government.

It seems to me that the Court is confusing the "plain view" doctrine with the doctrine that provides that it is unnecessary to obtain a warrant for an arrest where an officer sees the crime being committed in his presence. In this case, both the plain view of the guns on the back seat and the plain view of an opened bottle of liquor on the front seat were totally innocent. The police officer's right to arrest the occupant of the automobile arose only after he had searched the automobile to the extent of removing the bottle and inspecting it to determine whether the driver was guilty of possession of an unstamped bottle of liquor.

I would conclude that the arrest was illegal and that the seizure of the weapons was impermissible and that they should have been suppressed by the trial court. I would, therefore, reverse the conviction.