

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00464-CR
## NO. 02-11-00465-CR
## NO. 02-11-00466-CR

THOMAS LORIS                                                APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Thomas Loris brings four points challenging his two convictions for criminal trespass and his conviction for escape. We will affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On August 15, 2010, Officer Salim Plumb issued Loris a written criminal trespass warning for the Austin Ranch apartment and townhome community.

---

[1]See Tex. R. App. P. 47.4.

Nine days later, on August 24, 2010, Officer Plumb was dispatched back to the Austin Ranch community to investigate a criminal trespass complaint involving Loris. When Officer Plumb arrived at the property, he saw Loris's vehicle being driven and stopped it. Officer Plumb arrested Loris for criminal trespass after he admitted that he had knocked on the door to his girlfriend's apartment, which was located in Austin Ranch.

About a month later, on September 29, 2010, Loris, Jeremy Love, and Love's girlfriend were at a restaurant and bar located in Austin Ranch when Loris decided to go to Brooke Dobbs's apartment, which was also located in Austin Ranch. Dobbs later contacted Love and asked him to get Loris out of her apartment. When Love attempted to do so, Loris acted "a little irrational," and Dobbs's neighbor, Jason Phillips, was awakened by the activity and went outside to investigate. Loris became upset, hit himself in the head, and acted like he wanted to fight Phillips. The commotion awoke Officer Kyle Koiner, another resident of the apartment complex; he came outside wearing a shirt and hat that said "police," had his gun in his hand, and ordered everyone onto the ground. Everyone but Loris complied with the command; Loris "kept on getting in a lunging stance" and told Officer Koiner, "[F]uck you, you're not a police officer." Officer Graham Bloodworth arrived shortly thereafter and handcuffed a "very aggressive" and "very belligerent" Loris after he ran towards Officer Bloodworth's police cruiser. Police ultimately arrested Loris for criminal trespass.

On the way to jail, Loris kicked one of the cruiser's rear windows until it broke and, still handcuffed, jumped out of the window feet first. Officer Bloodworth stopped the vehicle and grabbed Loris, who was already on his feet.[2]

The jury convicted Loris of both criminal trespass offenses and the escape offense. The trial court sentenced him to 120 days in jail, probated for twenty-four months, and a $500 fine for the August 24, 2010 criminal trespass conviction; 180 days in jail, probated for twenty-four months, and a $500 fine for the September 29, 2010 criminal trespass conviction; and 250 days in jail for the September 29, 2010 escape conviction.

## III. REASONABLE SUSPICION

In his first point, Loris argues that the trial court erred by concluding that Officer Plumb had reasonable suspicion to stop Loris's vehicle on August 24, 2010, and, consequently, by permitting Officer Plumb to testify at trial about the statements that Loris made during the stop. Loris specifically contends that the stop was illegal because Officer Plumb had no warrant and did not observe Loris commit any offense. Specifically, Loris states:

### Point of Error One

In Cause No. CR-2010-06514-C, the trial court violated Appellant's federal and state constitution right against unreasonable searches and seizures by overruling Appellant's Motion to Suppress the stop and fruits of Appellant's detention and allowing as evidence a non-Mirandized statement over Appellant's objection.

---

[2]According to Loris, he suffered road rash and had a collarbone "out of place."

3

The argument is unpersuasive.

The State provides in its brief:

> The Fourth Amendment forbids unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8, 88 S. Ct. 1868, 1873, 20 L. Ed. 2d 889, 898 (1968). If a police officer lacks probable cause to arrest, the officer can briefly detain that person and investigate circumstances that provoke suspicion when his observations lead him to reasonably suspect that a particular person has committed, is committing, or is about to commit a crime. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317, 334 (1984); *Terry*, 392 U.S. at 10 (1968); *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). To justify this intrusion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonabl[y] warrant that intrusion." *Terry*, 392 U.S. at 21 (1968). The facts used to briefly detain a person must amount to more than a hunch. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

In addition, in the case of *Atwater v. City of Lago Vista*, the Court held that the Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine. 532 U.S. 318, 323, 354, 121 S. Ct. 1536, 1541, 1557 (2001).

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of

4

credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

An officer may conduct a lawful, warrantless temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 46–47, 52 (Tex. Crim. App. 2010) (defendant, while walking in neighborhood, appeared suspicious to police officer, who said to defendant, "Come over here and talk to me"; officer smelled what he thought was the odor of recently smoked marijuana coming from defendant's clothes and breath; then an immediate pat-down search revealed defendant was in possession of a firearm). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

An evaluation of Fourth Amendment search and seizure protections was made in the case of *Wood v. State*, in affirming the conviction and the initial search, in which the court observed:

> The Fourth Amendment has been held not to require a policeman who lacks a precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow crime to occur or a criminal to escape. *Adams v. Williams*, 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). Circumstances short of probable cause for arrest may justify temporary detention for

investigation and questioning. *Baity v. State*, 455 S.W.2d 305 (Tex. Cr. App. 1970), *cert. denied*, 400 U.S. 918, 91 S. Ct. 180, 27 L. Ed. 2d 158. Thus, neither tests of reliability demanded for showing of probable cause nor showing of probable cause is required to justify an investigative stop. *United States v. Rollerson*, 491 F.2d 1209 (5th Cir. 1974). A brief stop of a suspicious individual in order to determine his identity or to maintain status quo momentarily while obtaining more information may be reasonable in light of facts known to the officer at the time. *Adams v. Williams*, supra.

*Wood v. State*, 515 S.W.2d 300, 305–06 (Tex. Crim. App. 1974).

Further, an officer may rely on information received from a citizen, rather than his direct observation, so long as the citizen's statement is reasonably corroborated by other matters within the officer's knowledge. *Brother v. State*, 166 S.W.3d 255, 258–59 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1150 (2006); *Turley v. State*, 242 S.W.3d 178, 181 (Tex. App.—Fort Worth 2007, no pet.). Corroboration means that the officer confirms enough facts to conclude reasonably, in light of the circumstances, that the information provided is reliable and a detention is justified. *Brother*, 166 S.W.3d at 259 n.5; *Turley*, 242 S.W.3d at 181. A citizen's tip deserves great weight when there is a detailed description of the wrongdoing along with a statement that the event was witnessed firsthand, when a citizen puts herself in a position to be held accountable for her intentions, or when the citizen is not connected with the police or a paid informant. *Turley*, 242 S.W.3d at 181. "To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny." *Brother*, 166 S.W.3d at 259.

6

Here, Officer Plumb received the details about the criminal trespass complaint when he was dispatched to Austin Ranch. He heard Loris's name, knew that Loris had previously been warned to stay out of Austin Ranch, and believed that Loris had violated the law when he saw Loris's vehicle being driven there.[3] To the extent that Officer Plumb's decision to stop Loris was based on information derived from the complainant's call to authorities, the information was sufficiently reliable to justify the stop—the complainant was not anonymous, she was in a position to be held accountable for her actions, she had witnessed Loris's purported criminal trespass firsthand, and she was not a paid informant. At the time of the stop on August 24, Loris was also identified by the property manager, Mann, as the person who had previously, on August 15, been given a

---

[3]On August 15, 2010, Officer Plumb met with Loris and with the property manager, Kenneth Mann. At the request of Mann, Officer Plumb issued a criminal trespass warning to Loris. Upon being dispatched to Austin Ranch, Officer Plumb was told by the dispatch officer that a call was received from a female indicating that Loris was at her front door at Austin Ranch. As he was approaching the property of Austin Ranch on a public road, Officer Plumb observed Loris driving away from the property, recognized him, and stopped him 300 feet later. The trial court's factual findings provide:

> The court finds that the officer on the day in question, on August 24th, 2010, in response to the dispatch call that placed him at the scene, which he saw a purported - - the defendant, the person who was identified in the dispatch as the person who may have been criminally trespassed, that officer had a valid reason to temporarily detain Mr. Loris for that purpose; that in response to the detention, the conversations that he had with Mr. Loris, he was conducting an investigation; therefore the conversations and the statements that were made by Mr. Loris at the time the court finds are the result of an investigative detention and not a custodial interrogation. Therefore we'll allow those statements in.

These record items support Officer Plumb's reasonable detention of Loris and subsequent arrest on August 15, 2010.

7

criminal trespass warning because of a disturbance at Brooke Dobbs's apartment on August 15. *See Turley*, 242 S.W.3d at 181. Based on the totality of the circumstances, we hold that Officer Plumb had reasonable suspicion to stop Loris to investigate whether or not he had committed criminal trespass.[4] The trial court therefore did not err by admitting the statements that Loris made to Officer Plumb during the stop. We overrule Loris's first point.

## IV. THE RULE

In his second point, Loris argues that the trial court erred by denying his motion to strike Officer Koiner's testimony for violating rule of evidence 614. Rule of evidence 614, otherwise referred to as "the Rule," provides for the exclusion of witnesses from the courtroom during trial. Tex. R. Evid. 614. The purpose of rule 614 is to prevent the testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Once rule 614 is invoked, witnesses are instructed by the trial court that they cannot converse with one another or with any other person about the case, except by permission from the court, and the trial court must exclude witnesses from the courtroom during the testimony of other witnesses. Tex. R. Evid. 614; Tex. Code Crim. Proc. Ann. art. 36.06 (West 2007). If a witness violates rule 614, the trial court still has the discretion to allow testimony from the

---

[4]To the extent that Loris argues he should have received *Miranda* warnings after being detained, the law is settled that *Miranda* warnings arise when a person has been subjected to a custodial interrogation and that a person held for an investigative detention, as Loris was in this case, is not in custody. *See Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.).

witness. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997). In reviewing the trial court's decision to allow testimony, we determine whether the appellant was harmed or prejudiced by the witness's violation. *Id.* Harm is established by showing (1) that the witness actually conferred with or heard testimony of other witnesses and (2) that the witness's testimony contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard. *Id.*

Here, defense counsel questioned Officer Koiner on the morning of October 14, 2011, as to whether he had reviewed any documents prior to testifying, and Officer Koiner explained that he had reviewed his report regarding the events of September 29, 2010. After defense counsel took a moment to look over the report and confirmed with Officer Koiner that it "includes information from other officers," he moved to strike Officer Koiner's testimony for violating rule 614. At the brief hearing that followed, it was established that rule of evidence 614 was invoked the previous day—the morning of October 13, 2011; that Officer Koiner had obtained and reviewed his report that same morning at approximately 8:00 a.m.; that Officer Koiner was sworn as a witness during the afternoon of October 13, 2011; and that the report contains the handwritten word "Koiner" on the first page. We have reviewed the exhibit, and it contains reports from Officers Bloodworth and Hale.

Although the record demonstrates that Officer Koiner reviewed the report the same morning that the trial court invoked rule 614, we are unable to

determine whether Officer Koiner reviewed the report after rule 614 had been invoked. *See* Tex. Code Crim. Proc. Ann. art. 36.06 (stating that witnesses may not review reports "while under the rule"); *Guy v. State*, No. 13-98-00004-CR, 1999 WL 33757454, at *2 (Tex. App.—Corpus Christi Aug. 31, 1999, no pet.) (not designated for publication) ("'The rule' had not been invoked, so 'the rule' could not have been violated."). The trial court expressed a similar uncertainty at the hearing on Loris's motion to strike Officer Koiner's testimony. Moreover, to the extent that Officer Koiner may have violated rule 614, the trial court retained the discretion to not strike Officer Koiner's testimony, but Loris provides no argument or analysis regarding whether he suffered any injury or prejudice resulting from the trial court's decision to deny Loris's motion to strike, nor does our review of the record reflect any prejudice. *See* Tex. R. App. P. 38.1(i). We overrule Loris's second point.

## V. EXCLUSION OF EVIDENCE OF BIAS

In his third point, Loris argues that the trial court abused its discretion by prohibiting him from questioning Officer Koiner about the discount that he receives on his rent in exchange for serving as a courtesy officer for his apartment complex. According to Loris, the evidence was relevant to show whether Officer Koiner "could be biased against" Loris or whether Officer Koiner's actions during his confrontation with Loris were reasonable.

We review a trial court's decision to exclude evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A

10

trial court does not abuse its discretion as long as the decision to exclude the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (op. on reh'g).

The Confrontation Clause guarantees a defendant the right to cross-examine witnesses. *See* U.S. Const. amend. VI. "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness to testify." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). "The proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004), *cert. denied*, 544 U.S. 1050 (2005). However, the trial court has considerable discretion in determining how and when bias may be proved; it may limit cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Sansom v. State*, 292 S.W.3d 112, 118–19 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Limiting cross-examination does not violate the defendant's right to confront a witness so long as (1) the possible bias and motive of the State's witness is clear to the trier of fact; and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination. *Id.* at 119.

Here, Officer Koiner testified twice—on both direct and cross-examination—that he receives a discount on his rent in exchange for working as a courtesy officer. The only question that the trial court prohibited Loris from asking Officer Koiner concerned the *exact amount* of the discount that he receives. But the trial court acted within its discretion in limiting the questioning because the jury could have concluded that Officer Koiner was somehow biased in favor of the State without knowing the specific amount of the discount that he receives on his monthly rent. The jury heard testimony that Officer Koiner (a) works as a courtesy officer and (b) receives a discount on his rent. This was all the evidence that the jury needed to conclude that Officer Koiner possessed some type of bias for the State. Loris has not demonstrated the required nexus between the excluded testimony and Officer Koiner's purported bias; therefore, the specific amount of the discount was irrelevant. Further, Loris had the opportunity to thoroughly and effectively cross-examine Officer Koiner, which he surely did. Accordingly, we overrule Loris's third point.

## VI. JURY INSTRUCTION ERRORS

In his fourth point, Loris argues that the trial court erred by refusing to submit jury instructions under article 38.23 for both criminal trespass offenses and an instruction about the defense of necessity for the escape from custody offense.

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *See Abdnor v. State*, 871 S.W.2d 726,

12

731–32 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

## A.      Article 38.23(a)

Code of criminal procedure article 38.23(a) provides as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).  There are three requirements to trigger an article 38.23(a) instruction:  (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence of fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the statement claimed to be involuntary. *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008).  "Th[e] factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument." *Id.*

Regarding the August 24, 2010 criminal trespass, there was no disputed issue of any fact relevant to the stop.  The only dispute concerned whether Officer Plumb possessed reasonable suspicion to detain Loris.  The same can be said for the September 29, 2010 criminal trespass.  There was no fact issue

13

related to Loris's initial interaction with the police on Austin Ranch property. As the State points out, Loris merely perceived several events that occurred that night differently than the other witnesses. We hold that the trial court did not err by denying Loris's request for an article 38.23 instruction, and we overrule this part of Loris's fourth point.

### B.    Necessity

A defendant is entitled to an affirmative instruction on every defensive issue raised by the evidence regardless of the strength, weakness, or credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). The defense of necessity is available to justify criminal conduct if (1) the defendant reasonably believes that his conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct; and (3) no legislative purpose exists to exclude the defense. Tex. Penal Code Ann. § 9.22 (West 2011). A "reasonable belief" is a belief that an ordinary and prudent person would hold in the same circumstances as the defendant. Tex. Penal Code Ann. § 1.07(a)(42) (West Supp. 2012). For the evidence to support submission of a necessity instruction, the defendant must admit to committing the offense. *Wood v. State*, 271 S.W.3d 329, 334 (Tex. App.—San Antonio 2008, pet. ref'd).

Here, Loris testified that he thought he was about to experience a seizure while he was in the back of the police cruiser being transported to jail, that he

14

kicked out the window and stuck his head out to try to get help, and that Officer Bloodworth "slam[med] on the brakes, at which point [Loris] went right out the window." Thus, Loris never admitted to committing the offense of escape. Instead, he blamed physics for his "eject[ion]" from the cruiser.

Alternatively, Loris argues that he "feared that he was about to have a seizure" and that he "felt like he had to break the window and get out of the backseat of the car in order to prevent the immediate harm of having a seizure in the backseat of the squad car." Notwithstanding that the factual basis of this argument appears to conflict with Loris's testimony at trial (that he inadvertently, as opposed to intentionally, exited the vehicle), Loris could not have entertained a reasonable belief that jumping out of a moving vehicle was immediately necessary to avoid experiencing a seizure. We hold that the trial court did not err by denying Loris's requested necessity instruction, and we overrule the remainder of his fourth point.

## VII. CONCLUSION

Having overruled Loris's four points, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 1, 2013

15